STATE ex rel. KERR, Gov., v. GRAND RIVER DAM AUTHORITY.

No. 31745. Jan. 9, 1945.

*154 P. 2d 946.*

Randell S. Cobb, Atty. Gen., and S. H. King, Asst. Atty. Gen., for plaintiff.

Edward P. Marshall, of Tulsa, for defendant.

GIBSON, C. J. This is an original action in this court to enjoin a proposed bond issue upon the ground that the legislative grant of authority to issue such bonds was repealed by an intervening constitutional amendment.

Under the legislative act creating the Grand River Dam Authority, a conservation and reclamation district (S. L. 1935, p. 354), said Authority was authorized to issue $15,000,000 of revenue bonds, of which amount $14,-000,000 has heretofore been issued. By amendatory act in 1939 (S. L. 1939, p. 561, sec. 1; O. S. 1941, Tit. 82, sec. 870) the maximum limit of the authorized bond issue was raised to $25,000,000, and it was therein provided that $10,-000,000, which represented the amount of such increase, should be applied chiefly to the erection of Markham Ferry and Fort Gibson dams, the same to be constructed and completed in accordance with the laws relating to the Pensacola Dam then under construction by said Authority.

At the time of said leglislative enactments the provision of the State Constitution pertinent to the question here involved was article 10, sec. 23, as follows:

"The state may, to meet casual deficits or failures in revenues, or for expenses not provided for, contract debts; but such debts, direct and contingent, singly or in the aggregate, shall not, at any time, exceed four hundred thousand dollars, and the moneys arising from the loans creating such debts shall be applied to the purpose for which they were obtained ·or to repay the debts so contracted, and to no other purpose whatever."

In Sheldon v. Grand River Dam Authority, 182 Okla. 24, 76 P. 2d 355, we held that said Authority was not a political corporation or subdivision of the state within the meaning of section 26 of article 10 of the State Constitution but was a governmental agency as declared in the act of its creation. We further held that the project within the terms of the act was purely self-liquidating, and, thus falling within the scope of the special fund doctrine announced in Baker v. Carter, 1933, 165 Okla. 116, 25 P. 2d 747, and further defined and limited in the case of Boswell v. State, 1937, 181 Okla. 435, 74 P. 2d 940, the then authorized bond issue of $15,000,000 would not operate to create a debt within the inhibition of said article 10, sec. 23, of the Constitution, quoted supra.

The amendment of article 10, sec. 23, commonly known as the Budget Balancing Amendment, adopted by the voters of the state at an election held on March 11, 1941, was proposed by House Joint Resolution No. 10 of the Eighteenth Legislature of the state. The ballot title under which the question was submitted was as follows:

"Amending Section 23, Article 10, Oklahoma Constitution, prohibiting Legislature appropriating in excess of legal estimate of revenues, making parts of appropriations in excess of revenues collected void, prohibiting expenditures exceeding pro rata allocation of revenues, requiring legislation for reduction of all appropriations to come within revenues collected, authorizing issuance of deficiency certificates not exceeding $500,000.00 annually, prohibiting any debt or deficit except as provided in this amendment and

Sections 24 and 25, Article 10, Oklahoma Constitution, and providing Legislature may fund debt arising prior to July 1, 1941."

The concluding paragraph of the amendment, stressed by plaintiff as peculiarly applicable, is as follows:

"The State shall never create or authorize the creation of any debt or obligation, or fund or pay any deficit, against the State, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, except as provided in this amendment and in Sections Twenty-four (24) and Twenty-five (25) of Article Ten (X) of the Constitution of the State of Oklahoma. Provided, that the Legislature may fund or refund the State debt arising prior to July 1, 1941."

Subsequently to the adoption of said amendment, said Authority accepted an offer of the United States to purchase $1,300,000 of its originally authorized issue of $15,000,000, of which there then remained unsold $2,300,000. The sale and delivery was sought to be enjoined upon the sole ground that said amendment operated to cancel and annul the power and authority of defendant to issue and sell said bonds. That case was tried upon a stipulation of facts, and it appearing therefrom that a withdrawal of the authority previously granted to sell its bonds to the maximum of said $15,000,000 would impair the obligation of contracts in contravention of the inhibition of the Federal Constitution, this court held that by reason thereof said amendment could have no operative force as to the proposed issue and found it unnecessary to determine whether the amendment if unimpeded by previous contract would nullify the previous legislative grant of authority to issue bonds. Wickham v. Grand River Dam Authority, 189 Okla. 540, 118 P. 2d 640.

The proposed bond issue involved herein is of the amount of $11,000,000, which includes the unsold $1,000,000 authorized under the Grand River Dam Act (S. L. 1935, p. 354, sec. 10) and

$10,000,000 authorized under said Act of 1939 (O. S. 1941, Tit. 82, sec. 870).

As tersely stated in brief for plaintiff, "The issues involved in this case are whether or not said constitutional amendment prohibits the defendant from issuing and delivering any of its revenue bonds, which have not been issued or sold, or which it is not obligated to issue under contracts and agreements entered into prior to the adoption of said constitutional amendment to section 23, art. 10, of the Constitution," the affirmative of which is urged by plaintiff and denied by defendant. It is further urged by defendant that, by reason of the contractual relation theretofore existing between defendant Authority and United States, the proposed purchaser of the bonds sought to be issued, the permitting of said amendment to operate as claimed would impair the obligations of such contracts. Except to the extent such contention applies to the $1,000,000 of the proposed issue which is issuable under authority of the act creating the Authority, touching which it is conceded by plaintiff the doctrine announced in Wickham v. Grand River Dam Authority (supra) may apply, such contention is challenged by plaintiff.

In view of the conclusion we reach herein that said amendment in no wise impairs the legislative grant of power to said Authority under said amendatory act of 1939 to issue said bonds, we deem it unnecessary to discuss the question of impairment of contract.

It is urged on behalf of plaintiff that the second paragraph of said amendment in providing "any department, institution or agency of the state operating on revenues derived from any law or laws which allocate the revenues thereof to such department, institution or agency, shall not incur obligations in excess of the unencumbered balance of surplus cash on hand" clearly indicates an intent to place all state agencies on a cash basis, and that inasmuch as defandant Authority has been declared by this court (Sheldon v. Grand River

Dam Authority, supra, to be a *governmental agency* in contradistinction to a political corporation or subdivision of state within the meaning of section 26, art. 10, of the Constitution, and is operating on revenues derived by law which allocates the revenue thereof to said agency (82 O. S. 1941, sec. 868), same is limited by the provisions of said paragraph, and that the limitation of the indebtedness thereunder would apply to any revolving as well as an appropriated fund.

That the Grand River Dam Authority is a governmental agency is clear because it is expressly declared to be such by the law creating it (O. S. 1941, Tit. 82, sec. 861) and expressly held to be such by this court in Sheldon v. Grand River Dam Authority (supra), as stated. That the term "agency of state" used in the cited second paragraph of the amendment is sufficiently broad to include such a governmental agency as said Authority is beyond question. But whether it is so included depends upon whether it is within the purview of the amendment. It is to be borne in mind that the subject matter of the amendment is not to afford a definition of the powers of state agencies but only an aspect thereof, and that only to the extent same would be involved in the policy of retrenchment outlined in the amendment. The then progressively mounting public indebtedness and the undeniable and notorious fact that same was due to the practice of incurring indebtedness through appropriations that exceeded probable revenues was the impelling reason for the amendment which was designed to correct the evil.

The first paragraph of the amendment requires that there be made before the convening of each regular session of the Legislature an estimate of the revenues for each year of the next biennium under laws in force and that may be enacted, and requires that legislative appropriations be within such estimate.

The second paragraph provides that portion of every appropriation at the end of each fiscal year which is in excess of revenues collected and allocated shall be null and void. It then provides for allocation of revenues to departments, institutions, etc. And immediately following such provision for allocation there appears the hereinbefore quoted language relied upon by plaintiff, to wit: "Any department, institution or agency of the State operating on revenues derived from any law or laws which allocate the revenues thereof to such department, institution or agency, shall not incur obligations in excess of the unencumbered balance of surplus cash on hand." In order to conclude from this language that defendant Authority is placed on a cash basis and denied the right to incur obligations as urged it is necessary to find that such Authority is within the class characterized, and with such finding it must follow that such Authority is potentially entitled to invoke the benefit of the proviso thereto wherein the Governor is given authority to issue a deficiency certificate or certificates to the Auditor for the benefit of such agency if the amount be within the appropriation for such agency, upon which warrants may issue and same become a part of public debt.

We hold it to be manifest that the word "revenues," as used, has reference to revenue provided under the taxing power of the state, and the word "obligations" has reference to an indebtedness for the payment of which resort, previous to such amendment, might properly be had to the taxing power of the state. And, hence, it follows that agencies such as defendant Authority that do not operate in whole or in part on state revenue as defined and whose obligations cannot become debts of the state are not within the purview of said provisions of the amendment inhibiting creation of indebtedness in excess of current revenue.

It is further urged that by the last paragraph of said amendment (quoted supra) such agency is prohibited from incurring any indebtedness or obliga-

tion regardless of its form or the source of money from which it is to be paid except as provided in the amendment and sections 24 and 25 of article 10 of the Constitution, and that by reason thereof a state agency is limited in like manner as this court held a municipal corporation was limited by section 26 of article 10 in Zachary v. City of Wagoner, 146 Okla. 268, 292 P. 345.

There is indicated no reason to believe that the words "department, institution or agency" used in the third paragraph of the amendment are more comprehensive than the same words used in the second paragraph. As a matter of fact the succeeding words, "except as provided in this amendment," are confirmative of the presumptive conclusion that the class is identical. Hence, the controlling considerations being the same, we hold that the Authority by reason of its character as a self-liquidating agent is not embraced with the terms of said third paragraph. And by reason of this conclusion it follows that such Authority in the character of its capacity as an agency occupies no different position in the aspect mentioned and that the doctrine of the case of Zachary v. City of Wagoner has no applicable force for reasons set forth in Baker v. Carter (supra) and Boswell v. State (supra), wherein the doctrine thereof was distinguished.

No more is needed to be said to warrant the conclusion we have reached. However, the correctness thereof is so fortified by the cogency of other matters equally pertinent to the question it is well to invoke the emphasis they afford.

It is contended, and properly, on authority of Shaw, State Auditor, v. Grumbine, 137 Okla. 95, 278 P. 311, that in construing a constitutional provision the object is to give effect to the intent of its framers and of the people in adopting it and that in the absence of ambiguity the natural significance of the words in their grammatical arrangement should control. It is in recognition of this rule that we have principally undertaken to analyze the language of the amendment to determine the meaning of the word *debt* as used therein. However, inasmuch as we are yet within the atmosphere surrounding the adoption and thus the occasion is peculiarly apt to cast further light on "the intent of its framers and of the people in accepting it," we will consider this phase to ascertain the light there thrown on the question.

Legislatures, like courts, must function within constitutional limitations and it is to be presumed that it acts with a conscious regard thereof. Hence a legislative construction of the Constitution is deemed highly persuasive by the courts. Coyle v. Smith, 28 Okla. 121, 113 P. 944. This rule should have its most pronounced effect in instances like the present where the construction is afforded by the Legislature that framed the amendment and must have been conversant with its intent.

Such legislative theory as to the scope of the amendment must necessarily be reflected in the act vitalizing the amendment (Laws 1941, p. 274, et seq.; O. S. 1941, Tit. 62, sec. 8.1). In section 1 it is declared "the Legislature expressly states that its intention when submitting said proposed Constitutional Amendment to a popular vote was, and its interpretation thereof is, to affect appropriations only for the biennium beginning July 1, 1941, and thereafter." Without going into a detail of the many provisions it suffices to say that it deals exclusively with public revenue and, so far as material here, its allocation to departments on a percentage basis following the apportionment of tax collections to the treasury, same to be done monthly so as to provide "a working balance for each agency," and inhibiting the State Auditor from drawing warrants "in payment of obligations arising from the appropriation items of any agency of the state unless there is sufficient balance in the cash account of such agency to pay the warrant at the time it is issued."

Therein there is no provision regard-

ing the fiscal affairs of Grand River Dam Authority as such nor can any of its provisions be given an intelligent application to the affairs of said Authority or of any agency in whose fiscal affairs the public revenue plays no part. It must be presumed that the Legislature was familiar with the powers granted to said Authority by special laws and the definition thereof as declared by decisions of this court and was familiar with the rule that general laws not expressly so declaring do not repeal special laws except where there is an absolute incompatibility (State ex rel. King v. White, 170 Okla. 126, 39 P. 2d 69) and that such rule is applicable to constitutional provisions (Adams v. City of Hobart, 166 Okla. 267, 27 P. 2d 595). Yet, in the implementation of the amendment there is neither an express repeal nor a provision that gives rise to an implication that the power of the Authority is considered or sought to be revoked or impaired by said amendment. The act, so far as expressive of the intent of the framers, is in complete accord with the conclusion herein reached.

The amendment was submitted on the ballot title quoted above. The people were aware of the mounting state indebtedness which was the impelling reason for the amendment. It was publicized and known, and is still referred to, as the Budget Balancing Amendment. The term "debt or deficiency," as used in the title, necessarily includes an indebtedness for the payment of which resort may be had to state revenue. It is only such debts that would be involved in balancing the budget. There is nothing on which to predicate a contention that the people contemplated the inhibition of a debt that did not involve the revenues or resources of the state. Yet to warrant the construction contended for it would need to appear that the people had in mind the Authority and other like agencies, and believed that the indebtedness thereof were included within the proposed inhibition notwithstanding they do not affect public revenue. The contention carries no appeal. However, the facts that such agencies were established by special laws, their debt-making power established by the decisions of this court, and that, too, without recourse to the revenues of the state, resulting in the anomaly of public benefit without tax burden, and the further fact that such agencies are neither mentioned nor their power to create indebtedness either expressly or impliedly, by any reasonable intendment, brought within such inhibition, completely negative any such contention.

Furthermore, in his brief on behalf of plaintiff, the Attorney General, in emphasizing the importance of the instant decision, expresses the belief that the same in determining the constitutional question involving the power of defendant Authority to issue revenue bonds will also determine the power of certain institutions to issue revenue bonds under Housing Authority Acts passed by the Nineteenth Legislature.

Without considering the provisions of said acts, the legal effect of which is not expressly involved herein, we deem it well to say that the passage of such acts which purport to grant such power necessarily involves a legislative construction that the constitutional inhibition contended for by plaintiff does not obtain and, further, that such construction has persuasive force.

In view of the conclusion reached, it is ordered that the prayer for an injunction be and the same is hereby denied.

HURST, V. C. J., and RILEY, OSBORN, BAYLESS, DAVISON, and ARNOLD, JJ., concur.