1998 OK 43

**In the Matter of the PROTEST AGAINST THE TAX LEVY OF ARDMORE INDEPENDENT SCHOOL NO. 19 FOR FISCAL YEAR 1997–1998.**

**No. 90885.**

Supreme Court of Oklahoma.

May 27, 1998.

Woodrow George, Ardmore, for Appellant.

William P. Bleakley, Laura L. Holmes, The Center for Education Law, Inc., Oklahoma City, for Appellee.

HODGES, Justice.

¶1 The questions presented in this appeal are (1) whether the Oklahoma Constitution or the Oklahoma statutes prohibit the calling of a second election on the question of a building-fund levy in the same year as a previous election at which the question of the levy failed, and (2) whether forty-five days is adequate notice of a special election held on the statutorily determined date for the annual runoff election when no runoff election is held. We answer the first question in the negative and the second question affirmatively.

## I. FACTS

¶2 The facts are uncontested. On October 10, 1996, the Board of Education (Board) of the Ardmore School District, Independent School District No. 19 (School District) passed a resolution calling for an election to be held on February 11, 1997, the date set by statute for the general election. In addition to the election for a member of the Board, the resolution called for a five-mill emergency levy, a ten-mill support levy, and a five-mill building-fund levy. The resolution was filed with the Carter County Election.

¶3 The general election was held on February 11, 1997, as called. Because there was only one candidate, no election for membership on the Board was held. The emergency levy and the local support levy passed, but the building-fund levy failed at the general election. On February 14, 1997, the Board called a special election for April 1, 1997, on the question of the building-fund levy. On April 1, 1997, on the day statutorily designated for the annual runoff election, the building-fund levy was approved by a majority of the voters.

¶4 The Board filed an estimate of needs for 1997–1998 as provided by law. The estimate of needs incorporated the funds from the building-fund levy in the approximate amount of $396,000.00. The protestant, a taxpayer, timely filed a protest which was heard by the Court of Tax Review. The members of the Court of Tax Review, the Honorable Doug Gabbard II, the Honorable Willard Driesel, and the Honorable Farrell Hatch, found that there was "no statutory or constitutional prohibition against a school district submitting a tax levy in more than one election[,]" and notice of the second election on April 1, 1997, was adequate. The funds have been collected and are being held by the county treasurer pending the outcome of the protest.

¶5 The protestant appealed arguing that a second election on the same question of the building-fund levy was not permitted within the same year as the first election and that forty-five days was inadequate notice of the second election. This Court retained the appeal for disposition on the merits.

## II. THE OKLAHOMA CONSTITUTION

¶6 Article X, section 10 of the Oklahoma Constitution authorizes a five-mill levy "for the purpose of raising money for a building fund for a school district". The only constitutional qualifications are that the levy not exceed five mills of the assessed value of the taxable property in the school district and that the levy be approved by a majority of the qualified voters. There is nothing in section 10 which prohibits more than one election on the same proposed building-fund levy in the same year. *See* Okla. Const. art. X, § 10.

¶7 A constitutional provision is to be applied to give effect to the intent of the people voting on it. *Draper v. State*, 1980 OK 117, ¶8, 621 P.2d 1142, 1145. The intent is determined by the provision itself, and where unambiguous, courts are not at liberty to search beyond the instrument for its meaning. *Id.* at ¶8, 621 P.2d at 1145–46. Neither do courts or legislatures have the authority to augment or diminish the rights granted by the Constitution. *McCurtain County Excise Bd. v. St. Louis–San Francisco Ry.*, 1959 OK 110, 340 P.2d 213, 216; *Draper*, 1980 OK 117 at ¶8, 621 P.2d at 1146.

¶8 Section 10 is a grant of power to the voters of a school district to raise money by a tax levy to erect, remodel, and repair build-

ings and to purchase furniture. *See Oklahoma County Excise Bd. v. Kurn,* 1941 OK ——, 189 Okla. 203, 115 P.2d 113, 115. The voters of the School District have exercised this power to levy a building-fund tax and have complied with all the constitutional requirements for exercising this grant of power. It is not within this Court's authority to override this right of the voters of the School District to levy a tax for the purposes set out in section 10. The election on April 1, 1997, authorizing the building-fund levy complies with section 10 of article X of the Oklahoma Constitution.

¶ 9 The protestant admits that nothing in section 10 of article X prohibits a second election on the same question in a tax year. However, the protestant argues that the number of elections on the building-fund levy is limited to one per year by section 9 of article 10. Section 9(d) and (d-1) applies to the "emergency levy" and the "local support levy" and states that the levies must be approved at an election each year. As with section 10, there is nothing in section 9(d) and (d-1) that prohibits a special election on the questions of the "emergency levy" or the "local support levy" should the levies fail to pass at the general election. Additionally, the intent of section 10 is found from the clear language of the provision, and we are not at liberty to look beyond section 10 itself. *See Draper,* 1980 OK 117 at ¶ 8, 621 P.2d at 1145–46; *McCurtain County Excise Bd.,* 1959 OK 100, 340 P.2d at 213.

¶ 10 There are no express or implied limitations in sections 9 and 10 upon the power of a school board to call a second election on the question of a building-fund levy after the failure of the question at a general election. Section 10 mandates certain requirements if an election on the question of a building-fund levy is held. Those requirements have been met in the election underlying the levy address in this appeal. The right to determine the need for a building-fund levy is with a majority of the voters of the School District, and they have authorized the levy according to the provisions of article X, section 10.

### III. THE OKLAHOMA STATUTES

### A. Statutory Prohibition Regarding the April 1, 1997, Election

¶ 11 The protestant also argues that there is no statutory authority for a second election on the question of a building-fund levy after the defeat of the levy at the general election. Because article X, section 10 is self-executing, it does not need legislation to become operative, *St. Louis–San Francisco Ry. Co. v. Bryan County Excise Bd.,* 1954 OK ——, 271 P.2d 389, 390; *Protest of Chicago, R.I. & P. Ry. Co.,* 1932 OK ——, 160 Okla. 226, 16 P.2d 855, 856–57. As such the Legislature has no authority to restrict the operation of section 10. *See State v. Grand River Dam Auth.,* 1945 OK ——, 195 Okla. 8, 154 P.2d 946, 951; *St. Louis–San Francisco Ry. Co.,* 1954 OK ——, 271 P.2d at 391. "Legislatures must function within constitutional limitations, and it is presumed that a legislature acts with a conscious regard thereof." *Grand River Dam Auth.,* 154 P.2d at 951. The statutes regarding elections on the question of a building-fund levy are construed and applied subject to the constitutional limitation on the Legislature's power.

¶ 12 Two current statutory provisions are pertinent to the analysis of this issue. The first is section 5–134 of title 70 which provides: "[T]he board of education of any school district may call a special election for any date for the purpose of voting upon a levy authorized by Section 9 or Section 10, Article X of the Oklahoma Constitution, as amended." The second is section 13A–103 of title 26 which provides for the general election for members of a school board and on questions of levies under sections 9, 9B, and 10, article X of the Oklahoma Constitution to be held on the second Tuesday of February. Section 13A–103 also provides: "The board of education of every school district ... may call a special election for the purpose of voting on any matter or question authorized by law."

¶ 13 The protestant argues that by providing for general elections on the question of levies to be held on the first Tuesday in February in section 13A–103 of title 26, the Legislature has precluded elections on the

question of levies under section 10 from being held on any other date. The protestant also conjures a construction of section 5–134 of title 70 from its legislative history that it only applies to an election for an "excess levy" not for a building-fund levy.

■ ¶ 14 The purpose of statutory construction is to ascertain the legislative intent. *First Am. Bank and Trust v. Oklahoma Indus. Fin. Auth.,* 1997 OK 155, ¶ 19, 951 P.2d 625. The legislative intent is to be determined first by the plain language of the statute. *Id.* When the statute is unambiguous, resorting to additional rules of construction is unnecessary. *Id.*

■ ¶ 15 In the present case, section 5–134 of title 70 is unambiguous. Section 5–134 clearly states that a board of education "may call a special election for any date for the purpose of voting" on a building-fund levy. This provision unequivocally authorized the School Board to call a special election on the question of the building-fund levy for April 1, 1997. There is nothing in section 5–134 which limits a school board's authority to call the election because the question was submitted to the voters at the general election and failed. The clear language of section 5–134 authorized the April 1, 1997 election.

■ ¶ 16 Like section 5–134 of title 70, section 13A–103 of title 26 clearly authorizes a school board to call a special election on the question of a building-fund levy. Section 13A–103 states that a school board may call a special election on any question authorized by law. An election on the question of a building-fund levy is authorized by article X, section 10 of the Oklahoma Constitution. Thus, section 13A–103 legislatively confirmed the School Board's constitutional power to call the April 1, 1997 election. Because the language of both section 5–134 of title 70 and section 13A–103 of title 26 is unambiguous, it is unnecessary to resort of other rules of statutory construction such as those involving legislative history.

¶ 17 The legislative sanction of a school board's authority to call a special election on the question of a building fund levy is consistent with a school board's constitutional power and the rule that the Legislature cannot limit this power but only provide procedural mechanisms to carry out the power. Even if these legislative provisions regarding special elections on the question of a building-fund levy were not clear, rules of statutory construction would compel the conclusion that the School Board was legislatively empowered to call the April 1, 1997 election. This is so because we are bound to a statutory construction which will give a meaning free from "constitutional doubt rather than one which would leave [a statute] fraught with some lingering fundamental-law infirmities." *Baptist Med. Ctr. of Okla. v. Aguirre,* 1996 OK 133, ¶ 11, 930 P.2d 213. Any other conclusion would result in a conflict between the constitutional rights under article X, section 10 and the statutory procedures for the election process.

¶ 18 The protestant's position is that the power to call the April 1, 1997 election had to be affirmatively stated by the Legislature. This argument is not persuasive because article X, section 10 is self-executing and does not need legislation to carry it into effect. *See Movants to Quash Grand Jury Subpoenas v. Powers,* 1992 OK 142, ¶ 3, 839 P.2d 655, 656. Thus, we do not search the statutes for authorization to call the April 1, 1997 election.

## B. Notice

■ ¶ 19 Protestant contends that the notice of the April 1, 1997 special election was inadequate because it was made less than sixty days before the date on which the election was conducted. On February 14, 1997, the School Board adopted and filed the resolution calling for the April 1, 1997 election. Forty-six days lapsed between the time the resolution was filed and the election.

¶ 20 The general rule is that a school board must call a special election at least sixty days before the election is to be held. Okla. Stat. tit. 26, § 12–116 (Supp.1992). An exception allowing forty-five days notice is provided for special elections held on the date of the annual school runoff election for school board membership. *Id.* The date of the annual runoff election for school board membership is statutorily set for the first

Tuesday in April after the general election—April 1, 1997, in the present case. *Id.* at § 13A–103(A). The protestant submits that the sixty day notice requirement applies to the April 1, 1997 election, because there was not a runoff election for membership on the School Board.

¶ 21 Legislative intent is of primary concern. *Sharp v. Tulsa County Election Bd.,* 1994 OK 104, ¶ 9, 890 P.2d 836. As with constitutional provisions, the plain language of the statute controls. *Id.* Section 12–116 states that only forty-five days notice is required if a special election is "to be held on the date of the *annual school runoff election.*" Okla. Stat. tit. 26, § 12–116 (Supp. 1994) (emphasis added). A school district does not hold an annual runoff election because it only calls a runoff election when a candidate for membership on the board does not receive more than fifty percent of the votes. *Id.* at § 13A–103. Thus the term "annual" has no meaning if section 12–116 is construed to refer to the date of a local school district's runoff election. The term "date of the annual school runoff election" is a clear expression that the statute refers to the state-wide date for the annual runoff election of the first Tuesday in April, and the forty-five day notice exception is not dependent on a particular school district holding a runoff election.

¶ 22 Section 12–116 does not require that a local school district hold a runoff election for membership on its board before the forty-five day notice requirement applies. The statute does not require that a runoff election occur on the first Tuesday in April as a prerequisite to the forty-five day notice exception. In the present case, the notice of the April 1, 1997 election on the question of the building-fund levy was more than the forty-five days required by section 12–116, title 26, and, thus, the election was timely called. The notice of the election to be held on April 1, 1997, was adequate under section 12–116.

## IV. CONCLUSION

¶ 23 Article X, section 10 of the Oklahoma Constitution grants the voters of a local school district the right to levy a tax for the purpose of erecting, remodeling, repairing, and furnishing school buildings. The voters at the April 1, 1997 election exercised this right. All the constitutional requirements were met for the election to be valid.

¶ 24 This constitutional right needs no legislation to put it into force. Without infringing on the rights of the voters under article X, section 10, the Legislature enacted a procedural process for the election on questions of a building-fund levy. Title 70, section 5–134 and title 26, section 13A–103 affirmatively recognize the right of a school board to call a special election on the question of a building-fund levy. Nowhere in either statutory provision is the right to call an election on the question of a building-fund levy restricted because the question failed at a previous election. The April 1, 1997 election did not violate either of these statutory provisions.

¶ 25 Title 26, section 12–116 controls the time for calling a special election to be held on the date of the annual school runoff election. Such an election must be called at least forty-five days before it is to be held. The April 1, 1997 election was called forty-six days before it was held. The notice of the election was adequate.

¶ 26 The order of the Court of Tax Review denying the tax protest is affirmed.

¶ 27 KAUGER, C.J., SUMMERS, V.C.J., and LAVENDER, SIMMS, HARGRAVE, OPALA and WATT, JJ., concur.

¶ 28 ALMA WILSON, J., dissents.