Patricia **PRESLEY**, in her official capacity as Oklahoma County Court Clerk; **Carolyn Caudill**, in her official capacity as Oklahoma County Clerk; and **John Whetsel**, in his official capacity as Oklahoma County Sheriff, Appellants,

v.

The **BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY**, Appellees.

No. 92,675.

Supreme Court of Oklahoma.

May 18, 1999.

Timothy E. Rhodes, Chief Deputy Court Clerk, Oklahoma City, Oklahoma, for Appellants.

Gretchen Crawford, Assistant District Attorney, Oklahoma City, Oklahoma, John M. Jacobsen, Assistant District Attorney, Oklahoma City, Oklahoma, for Appellees.

¶1 KAUGER, J.:

¶2 It is uncontested that failure to give raises to all county officers under 19 O.S. Supp.1998 § 180.74 will result in differing pay scales for mid-term elected officials and those officers beginning terms after the statute's effective date of November 1, 1998.[1] The issue presented by the declaratory judgment action[2] is whether equal protection guarantees[3] are denied by the Okla. Const.

---

1. Also at issue are the salaries of employees of the elected officials whose compensation is defined as a percentage of the county officer's salary. See, 19 O.S. Supp.1998 § 180.81.

2. Title 12 O.S.1991 § 1651.

3. The United States Const., amend. XIV provides in pertinent part:

   "... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall

art. 23, § 10[4] and 19 O.S. Supp.1993 § 180.77[5] prohibiting mid-term election salary increases for public officials. We hold that the constitutional and statutory provisions do not violate public officials' equal protection guarantees.

## AGREED FACTS[6]

¶ 3 On November 1, 1998, 19 O.S. Supp. 1998 § 180.74 became effective. The statute outlines the basic salaries of county officers and provides formulas for future increases and decreases. The appellees, Board of County Commissioners of Oklahoma County (commissioners), met in a special session on November 2, 1998. The commissioners voted to increase the salary of county officers pursuant to the pay scale provided by § 180.74.[7] Annual increases of $6,000.00 were granted to all elected county officers—those beginning a new term of office and those public officials completing elected tenures.

¶ 4 The appellants, county officers, were in the middle of elected terms on November 1, 1998 — the effective date of 19 O.S. Supp.1998 § 180.74. After the county officers expressed concerns that their receipt of a mid-term pay increase would violate the Okla. Const. art. 23, § 10 and 19 O.S. Supp.

1993 § 180.77, the commissioners filed a declaratory judgment action on January 11, 1999. In the answer, filed on January 19th, the county officials joined the request for a determination of whether the raises were lawful. On February 19, 1999, relying on *Kirk v. Board of County Comm'rs,* 1979 OK 80, 595 P.2d 1334, the trial judge, Honorable Nancy Coats, found in favor of the commissioners approving the raises. We granted the county officers' motion to retain the appeal[8] on March 19, 1999.[9]

¶ 5 **MID-TERM PAY INCREASES FOR COUNTY OFFICERS PROHIBITED BY THE OKLA. CONST. art. 23, § 10 AND BY 19 O.S. Supp.1993 § 180.77 DO NOT DENY ELECTED OFFICIALS EQUAL PROTECTION.**

¶ 6 The county officials assert that equal protection guarantees are not infringed by a statutory scheme which results in differing pay scales for elected individuals performing essentially identical duties. They find support in *State* ex rel. *Edmondson v. Oklahoma Corp. Comm'n,* 1998 OK 118, 971 P.2d 868 in which we held that the Legislature lacked the authority to amend the Okla. Const. art. 9, § 18a[10] to grant Corporation

any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws...."
The Okla. Const., art. 2, § 7 provides:
"No person shall be deprived of life, liberty, or property, without due process of law."

4. The Okla. Const., art. 23, § 10 provides in pertinent part:

"Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment ..."

5. Title 19 O.S. Supp.1993 § 180.77 provides:

"County officers shall not receive any salary increase or decrease during their term of office unless by operation of law enacted prior to their election or appointment."

6. The county officials response to the commissioners' motion provides in pertinent part at pp. 1–2:

"... Defendants do not dispute any of the material facts recited in Plaintiff's Motion...."

7. Title 19 O.S. Supp.1998 § 180.74 outlines the basic salaries of all county officers and provides formulas for future increases and decreases.

8. Rule 1.24, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch. 15, App. 1.

9. Noting that the Attorney General had not been given notice pursuant to 12 O.S.1991 § 1653, the Court issued an order on March 6, 1999. The order granted the Attorney General an opportunity to submit a brief in the cause. On May 7, 1999, the Attorney General responded declining to brief the cause on grounds that the issues had been adequately presented by the parties.

10. The Okla. Const., art. 9, § 18a(A) provides:

"The salary of Corporation Commissioners shall be set by the Legislature and may be increased at any time during the term of their office. The purpose of this provisions is to assure that all Corporation Commissioners are paid equal salaries for their service without

Commissioners pay increases during their terms of office. The commissioners rely on *Kirk v. Board of County Comm'rs*, 1979 OK 80, 595 P.2d 1334 holding that a statutory scheme providing two differing pay scales for county officials based upon when they entered office violates equal protection guarantees. They argue that *Kirk* requires all county officers to receive the pay increases contained in 19 O.S. Supp.1993 § 180.77.

■ ¶ 7 Although neither the Legislature nor this Court has the authority to augment or diminish constitutional rights,[11] it is important to note that the efficacy of *Kirk* is questionable in light of subsequent legislative action and our recent opinion in *Edmondson*. Title 19 O.S. Supp.1978 § 180.62, considered in *Kirk*, created two distinct classes of elected county officials whose pay scales were determined by the date that a term expired or commenced. The Court declared the statute unconstitutional on June 5, 1979. In 1981, the Legislature amended the statute eliminating the offending classification. It enacted language referring to all county officers "upon which all salaries and future increases or decreases thereof shall be computed"[12]—language identical to that of the current statute. Additionally, in 1993, the Legislature added § 180.77 to the statutory scheme governing counties and county officers. Title 19 O.S. Supp.1993 § 180.77 prohibits county officers from receiving any salary increase or decrease during a term of office unless by operation of law enacted prior to election or appointment. In operation, it is identical to

the Okla. Const. art. 23, § 10. The statute and the constitutional provision permit varying a public officer's salary during a term if the change results from the operation of a statute enacted before the officer's election, i.e. elected officials salaries may be increased after an election or during a term of office if the law that alters the salary is enacted prior to the date of election.[13]

■ ¶ 8 The equal protection clause of the fourteenth amendment requires that no state "deny to any person within its jurisdiction the equal protection of the laws."[14] Due process protections encompassed within the Okla. Const. art. 2, § 7[15] are coextensive with those of its federal counterpart. The United States Constitution and the Oklahoma Constitution each contain built-in anti-discrimination components which afford protection against unreasonable or unreasoned classifications serving no important governmental interests.[16] The same equal protection component found in the fourteenth amendment of the United States Constitution is present in the due process clause of art. 2, § 7.[17]

■ ¶ 9 There is a strong presumption which favors legislative enactments. A statute will be upheld unless it is clearly, palpably, and plainly inconsistent with fundamental law.[18] In testing the validity of a state statute which differentiates in treatment of one class paralleled with its treatment of another class, the statute is immune to an equal protection attack if the basis for the differentiation is neither arbitrary nor capri-

---

regard to the time of their appointment or election."

**11.** *Matter of Protest Against the Tax Levy of Ardmore Ind. School*, 1998 OK 43, ¶ 7, 959 P.2d 580; *Draper v. State*, 1980 OK 117, ¶ 8, 621 P.2d 1142; *McCurtain County Excise Bd. v. St. Louis–San Francisco Ry.*, 1959 OK 100, 340 P.2d 213, 216.

**12.** Title 19 O.S.1981 § 180.62.

**13.** See, *State ex rel. Edmondson v. Oklahoma Corp. Comm'n*, 1998 OK 118, ¶ 12, 971 P.2d 868, 871; *Barton v. Derryberry*, 1972 OK 116, ¶ 6, 500 P.2d 281.

**14.** The United States Const., amend. XIV, see note 3, supra.

**15.** The Okla. Const. art. 2, § 7, see note 3, supra.

**16.** *Nelson v. Nelson*, 1998 OK 10, ¶ 11, 954 P.2d 1219; *Fair School Finance Council v. State*, 1987 OK 114, ¶ 34, 746 P.2d 1135.

**17.** *Nelson v. Nelson*, see note 16, supra; *Fair School Finance Council v. State*, see note 16, supra; *McKeever Drilling Co. v. Egbert*, 1935 OK ——, 170 Okla. 259, 40 P.2d 32, 35; *Callaway v. City of Edmond*, 1990 OK CR 25, ¶ 8, 791 P.2d 104.

**18.** *Nelson v. Nelson*, see note 16, supra; *Abrego v. Abrego*, 1991 OK 48, ¶ 8, 812 P.2d 806; *Turley v. Flag–Redfern Oil Co.*, 1989 OK 144, ¶ 20, 782 P.2d 130; *Black v. Ball Janitorial Serv., Inc.*, 1986 OK 75, ¶ 5, 730 P.2d 510; *Reherman v. Oklahoma Water Resources Bd.*, 1984 OK 12, ¶ 11, 679 P.2d 1296; *Kimery v. Public Serv. Co.*, 1980 OK 187, ¶ 6, 622 P.2d 1066.

cious, and it bears a reasonable relationship to a legitimate aim.[19] The Fourteenth Amendment does not require that equal protection be measured by exact equality of classification.[20] It does require that the classification rest on *bona fide*, not feigned differences; that the distinction have some relevance to the purpose for which the classification is made; and that the different treatments are not arbitrary.[21] Unless a classification jeopardizes the exercise of a fundamental right or it makes a classification on an inherently suspect characteristic, a classification which rationally furthers a legitimate state interest will withstand an equal protection challenge.[22]

¶ 10 In *Kirk*, the Court recognized the premise that equal protection does not require exact equality. In striking down the statutory provision providing two distinct pay scales for county officials, the Court stated that to do otherwise would result in an unconstitutional application of art. 23, § 10. Nevertheless, none of the policy reasons supporting art. 23, § 10's prohibition against changing the compensation of a public official during a current term of office were discussed. However, more recently, we enumerated the important governmental concerns behind such provisions in *Edmondson:* 1) to establish definiteness and certainty in the salary pertaining to an office; 2) to take from public bodies the power to make gratuitous compensation to officers in addition to that established by law; 3) to establish the complete independence of the three branches of government; 4) to prevent office holders from using influence and position to secure salary increases after being elected; and 5) to insure that pay increases enacted at taxpayers' expense are for the benefit of the office and not a particular elected official.

■ ¶ 11 Due process *per se* was not raised in *Edmondson.* However, the same important governmental interests relating to the prohibition in the Okla. Const. art. 23, § 10 against varying an elected official's salary during a term of office apply to the equal protection argument and to the ills which the government may rationally hope to avoid through limiting the conditions under which an elected official's salary may be adjusted. The statutory imposition in 19 O.S. Supp. 1993 § 180.77 encompassing county officers mirrors its constitutional counterpart. Both are rationally related to the important governmental interests considered in *Edmondson.* Therefore, we find that art. 23, § 10 of the Oklahoma Constitution and 19 O.S. Supp.1993 § 180.77 are not unconstitutional on equal protection grounds. To the extent that *Kirk v. Board of County Comm'rs*, 1979 OK 80, 595 P.2d 1334 is in conflict, it is expressly overruled.

## CONCLUSION

¶ 12 All reasonable doubt is resolved in favor of the constitutionality of legislative acts. Only when it is demonstrated that the Legislature has acted arbitrarily and capriciously exercised its authority will legislation be invalidated.[23] It is our duty to give effect to legislative acts, not to amend, repeal or circumvent them.[24] The strictures of the

**19.** *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985); *Nelson v. Nelson,* see note 16, supra; *Abrego v. Abrego,* see note 18, supra; *Turley v. Flag–Redfern Oil Co.,* see note 18, supra; *Kirk v. Board of County Comm'rs,* 1979 OK 80, 595 P.2d 1334, 1336–37.

**20.** *Norvell v. Illinois,* 373 U.S. 420, 423, 83 S.Ct. 1366, 1368, 10 L.Ed.2d 456, 459 (1963); *Nelson v. Nelson,* see note 16, supra; *Abrego v. Abrego,* see note 18, supra; *Turley v. Flag–Redfern Oil Co.,* see note 18, supra.

**21.** *Walters v. City of St. Louis,* 347 U.S. 231, 237, 74 S.Ct. 505, 509, 98 L.Ed. 660, 665 (1954); *Special Indem. Fund v. Bedford,* 1993 OK 60, ¶ 11, 852 P.2d 150.

**22.** *McGowan v. State of Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961); *Association for Equitable Tax. v. City of Oklahoma City,* 1995 OK 62, ¶ 12, 901 P.2d 800. See also, *Madden v. Commonwealth of Kentucky,* 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593 (1940).

**23.** *State ex rel. Edmondson v. Oklahoma Corp. Comm'n,* see note 13 at ¶ 14, supra; *Fair School Finance v. State,* see note 16, supra.

**24.** *City of Hugo v. Public Employees Relations Bd.,* 1994 OK 134, ¶ 23, 886 P.2d 485, 495; *McSorley v. Hertz,* 1994 OK 120, ¶ 22, 885 P.2d 1343, 1352.

Okla. Const. art. 23, § 10 and 19 O.S. Supp. 1993 § 180.77 are rationally related to governmental interests in ensuring the integrity and independence of elected officials. These provisions do not prohibit any or all increases in the compensation of public officials, but only the increases intended to take effect during a current term of office. The difference in treatment of newly elected officials and those completing terms of office does not violate equal protection guarantees. This finding is based on the Oklahoma Constitution which provides bona fide, separate, adequate and independent grounds for our holding.[25]

<div align="center">

**REVERSED**

ALL JUSTICES CONCUR.

---

**25.** *Michigan v. Long*, 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983).