### 2013 OK 74

**In the Matter of the Application of the OKLAHOMA DEVELOPMENT FINANCE AUTHORITY FOR APPROVAL OF OKLAHOMA STATE SYSTEM OF HIGHER EDUCATION MASTER REAL PROPERTY LEASE REVENUE REFUNDING BONDS, Series 2013A and 2013F; and Master Real Property Lease Revenue Bonds, Series 2013B, C, D, E, G, and H; and Master Equipment Lease Revenue Bonds, Series 2013A, and Master Equipment Lease Revenue Refunding Bonds, Taxable Series 2013B.**

**No. 111789.**

Supreme Court of Oklahoma.

Sept. 24, 2013.

Rehearing Denied Oct. 28, 2013.

---

## MEMORANDUM OPINION

¶ 1 Pursuant to 20 O.S.2011 § 14.1, original jurisdiction is assumed to address the protestants' challenge to several projects concerning the "Master Lease Program" of the Oklahoma State Regents for Higher Education authorized by 70 O.S.2011 §§ 3206.6–3206.6b.

¶ 2 This Act enables the Oklahoma State Regents for Higher Education to provide lease financing for colleges and universities which are part of the Oklahoma State System for Higher Education. The Oklahoma Development Finance Authority (ODFA) seeks the approval of the bonds which would be used to build various projects. However, the primary focus of protestants' concerns seems to be on the construction of the Medical Examiner's Building on a college campus in Oklahoma.

### I.

### OUR PRECEDENTS MANDATE THE APPROVAL OF THESE BONDS.

[1] ¶ 3 We recognized *In the Matter of the Application of the Oklahoma Capitol Improvement Authority,* 2005 OK 90, 130 P.3d 232, that bonds payable by the Regents are a special anomaly.[1] We held that bonds issued

---

1. *In the Matter of the Application of the Oklahoma Capitol Improvement Authority,* 2005 OK    90, ¶¶ 7–8, 130 P.3d 232 we said:

by the Regents do not violate the balanced budget provisions because the Legislature has no authority to direct the entity's spending decisions.[2] Because these bonds are payable only by the Regents, they cannot become debts of the state as a matter of law. The Regents have the sole constitutional authority to disburse funds appropriated to them in a lump sum by the Legislature.[3] The Legislature cannot be forced to appropriate funds to repay the bonds because it has no authority to dictate such a specific expenditure to the Regents.

¶ 4 The same rationale is applicable to this cause. If these types of bonds are not debts of the state as a matter of law because the Legislature cannot be forced to appropriate funds to repay them, it follows that the same

is true when the payment is coming from the colleges and universities whose allocations fall under the umbrella of the Regents.

¶ 5 Furthermore, much like the Trust Fund in *Oklahoma Capitol Improvement Authority,* supra, entities such as the Medical Examiner and the Board of Medicolegal Investigations have a statutory revolving fund that may receive money from various sources, including grants, gifts and fees.[4] So do colleges and universities. Funds from such monies may be used to pay building "rent." Consequently, we hold that *In the Matter of the Application of the Oklahoma Capitol Improvement Authority,* 2005 OK 90, 130 P.3d 232, is dispositive of this cause and that the protestants' request for oral argument should be denied.

---

¶ 7 The bonds we consider today, however, are unique and need not satisfy any of the exceptions described above. Because these bonds are payable only by the Regents, they cannot become debts of the state as a matter of law. The Regents have the sole constitutional authority to disburse funds appropriated to them in a lump sum by the Legislature. Okla. Const. art. 13–A, § 3; *see also Bd. of Regents of Univ. of Okla. v. Childers,* 1946 OK 212, ¶¶ 3–6, 170 P.2d 1018, 1018–19; *Bd. of Regents of Univ. of Okla. v. Baker,* 1981 OK 160, ¶ 19, 638 P.2d 464, 469. The Legislature cannot be forced to appropriate funds to repay the bonds because it has no authority to dictate such a specific expenditure to the Regents.

¶ 8 We first recognized the special nature of such bonds in 1945. *In re Bd. of Regents of Univ. of Okla.,* 1945 OK 224, 161 P.2d 447. Although the bonds at issue in that case might have qualified as self-liquidating bonds, that status was not determinative. Instead, this Court relied on *State ex rel. Kerr v. Grand River Dam Auth.,* 1945 OK 9, 154 P.2d 946, to hold that bonds issued by a government entity like the Regents do not violate the balanced budget provisions because the Legislature has no authority to direct the entity's spending decisions. *Bd. of Regents,* 1945 OK 224, ¶ 5, 161 P.2d at 448.

2. *In the Matter of the Application of the Oklahoma Capitol Improvement Authority,* see note 1, supra; *In re Bd. of Regents of Univ. of Okla.,* 1945 OK 224, 161 P.2d 447; *State ex rel. Kerr v. Grand River Dam Auth.,* 1945 OK 9, 154 P.2d 946.

3. *In the Matter of the Application of the Oklahoma Capitol Improvement Authority,* 2005 OK 90, ¶ 7, 130 P.3d 232; Okla. Const. art. 13–A,

§ 3; *see also Bd. of Regents of Univ. of Okla. v. Childers,* 1946 OK 212, ¶¶ 3–6, 170 P.2d 1018, 1018–19; *Bd. of Regents of Univ. of Okla. v. Baker,* 1981 OK 160, ¶ 19, 638 P.2d 464, 469.

4. Title 63 O.S. Supp.2012 § 954 provides:

A. The Board of Medicolegal Investigations is authorized to accept grants, gifts, fees or funds from persons, associations, corporations, or foundations for any purpose authorized by the Board.

B. There is hereby created in the State Treasury a revolving fund for the Office of the Chief Medical Examiner to be designated the "Chief Medical Examiner Revolving Fund". The fund shall be a continuing fund, not subject to fiscal year limitations, and shall consist of all moneys received from:

1. Laboratory analysis fees pursuant to the provisions of Section 1313.2 of Title 20 of the Oklahoma Statutes;

2. Grants, gifts, fees or funds from persons, associations, corporations or foundations pursuant to this section;

3. Document fees pursuant to the Oklahoma Open Records Act, Section 24A.1 et seq. of Title 51 of the Oklahoma Statutes; and

4. Cremation, burial at sea or other recognized means of dissolution permit fees pursuant to Section 1–329.1 of this title.

All monies accruing to the credit of said fund are hereby appropriated and may be budgeted and expended by the Office of the Chief Medical Examiner for the duties imposed upon the Board of Medicolegal Investigations by law. Expenditures from said fund shall be made upon warrants issued by the State Treasurer against claims filed as prescribed by law with the Director of the Office of Management and Enterprise Services for approval and payment.

## II.

### THE CONSTITUTIONAL PROVISIONS OF SEPARATION OF POWERS AND LOGROLLING ARE NOT VIOLATED.

#### A.

[2] ¶ 6 The protestants also raise additional challenges beyond those which were presented in *In the Matter of the Application of the Oklahoma Capitol Improvement Authority*, 2005 OK 90, 130 P.3d 232. They assert that the Master Lease Program violates the three branches of government's separation of powers[5] because: 1) the Medical Examiner's office is a state agency that receives appropriated monies, and it is the constitutionally mandated role of the legislature to allocate operational monies to the Medical Examiner's Office; and 2) the Legislature, in 2013, declined to approve SB 653, which would have authorized a bond issue for the new offices, it is a separation of powers violation for the new structure to be funded by any other mechanism.

¶ 7 This is not a separation of powers issue. The Legislature enacted 63 O.S. Supp.2010 § 935.1, directing the State Medical Examiner to evaluate a move to the University of Central Oklahoma campus and to consider funding the building by a lease purchase agreement. Moreover, the Legislature has full veto power over the enterprise.

¶ 8 Title 70 O.S. Supp.2010 § 3206.6a requires the legislature to approve any bonds that the State Regents for Higher Education want to use to finance the acquisition of or improvements to real property under the master lease program. The Regents must submit to the President Pro Tem of the Senate and the Speaker of the House, as well as the Governor, an itemized list of proposed projects and the method of financing each project. The legislature has forty-five (45) days to pass a concurrent resolution disapproving all or part of the proposed issuance. If the legislature remains silent for forty-five days, then the bonds are deemed to have been approved.

#### B.

[3] ¶ 9 The protestants' assert that the statute authorizing the Master Lease Program was unconstitutional at its inception because initially it was an appropriation bill containing more than one subject. The Legislature cured any logrolling error in the statute's original enactment when, on June 5, 2002 the Governor signed the single subject SB 1358, amending the statute without logrolling it with any other subject. *Oklahoma Natural Gas Co. v. State ex rel. Vassar*, 1940 OK 137, ¶ 14, 101 P.2d 793.

APPLICATION FOR APPROVAL OF THE OKLAHOMA STATE SYSTEM OF HIGHER EDUCATION MASTER REAL PROPERTY LEASE REVENUE REFUNDING BONDS, SERIES 2013A AND 2013F; AND MASTER REAL PROPERTY LEASE REVENUE BONDS, SERIES 2013B, C, D, E, G, AND H; AND MASTER EQUIPMENT LEASE REVENUE BONDS, SERIES 2013A, AND MASTER EQUIPMENT LEASE REVENUE RE-

---

5. The Okla. Const. art. 4, § 1 provides:

The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.

*See also,* Okla. Const., art. 5, § 55 relating to specificity of appropriated funds and Okla. Const. art. 10 § 16 relating to the purposes of borrowing. Protestants offer a blanket assertion that § 16 is violated and also contend that § 55 is violated, citing *Wells v. Childers*, 1945 Ok 365, 165 P.2d 371. This argument is unconvincing. *Wells* is distinguishable on its facts. We have already held that such bonds are the obligations of the Regents, not obligations of the State subject to appropriation limitations and that once appropriated, the allocations remain under the sole control of the Regents. *In the Matter of the Application of Oklahoma Capitol Improvement Authority*, 2005 OK 90, ¶ 10, 130 P.3d 232. Additionally, we note that nothing in the Oklahoma Bond Oversight and Reform Act 62 O.S.2011 §§ 695.1 *et seq.* addresses "conditional" approvals. The minutes submitted by the protestants reflect provisional and final approval, and the Authority insists that the bonds have been properly authorized and approved. Consequently, we need not address this issue under the facts of this cause.

FUNDING BONDS, TAXABLE SERIES 2013B APPROVED.

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 24th DAY OF SEPTEMBER, 2013.[6]

COLBERT, C.J., REIF, V.C.J., WATT, EDMONDSON, TAYLOR, GURICH, JJ., concur.

COMBS, J., concurring in part, dissenting in part.

WINCHESTER, J., disqualified.

KAUGER, J., recused.

COMBS, J., concurring in part, dissenting in part.

¶ 1 I agree with the majority's holding the Legislature cannot be forced to appropriate funds to repay the bonds in question. I give deference as a matter of *stare decisis* to this Court's previous decisions and their use by the majority in its analysis. However, I reserve doubt concerning the wisdom of sustaining the legal fiction that the State is not ultimately obligated to pay such bond indebtedness.

¶ 2 Respondent, C.L. Elliott (hereinafter "Elliott"), quotes from previous annual reports of the State Bond Advisor, Jim Joseph, stating all agency lease purchase agreements contain non-appropriation language. This language would allow the State to terminate the lease at the end of any fiscal year if sufficient funds were not appropriated to make the lease payments. The Applicant also quotes similar disclosures from the bonds' official statements. It appears to be the belief of Mr. Joseph that all credit markets still view these leases as ongoing commitments backed by the State's general resources. If the State chose not to appropriate sufficient funds to make such lease payments the State's credit rating would be seriously affected. For all intents and purposes, once a bond has been issued which requires appropriations as a source of payment, the State finds itself on a one-way street with no exit. This is so regardless of who is obligated to pay. I understand the financial expediency of using such vehicles for state improvements; however, the elephant in the room is being ignored.

¶ 3 This leads to my other concern. Would the elephant in the room be ignored if the Legislature provided more notice to its members? The Respondent, Senator Anderson, raises the issue concerning the statutory review mechanism for the Master Lease Program; specifically, the review process may not provide sufficient notice to legislators. Title 70 O.S.2011, § 3206.6a(B), provides the list of proposed projects and their financing shall be submitted by the Oklahoma State Regents for Higher Education to the Governor, the Speaker of the House and the President Pro Tempore of the State Senate. This statute further requires the Legislature to affirmatively disapprove a project or otherwise it will be deemed approved. Senator Anderson contends the remaining 147 members of the 149 member Legislature are never notified of the existence of the projects.

¶ 4 The mechanism found in § 3206.6a(B) is found in other statutory schemes. For example, the approval by the Legislature of proposed agency administrative rules may occur if the rule is not affirmatively disapproved. 75 O.S.2011, § 308(E). However, the Administrative Procedures Act, 75 O.S. 2011, § 250 et seq., at least contemplates such rules being vetted by legislative committees. Title 75 O.S.2011, § 307.1 and § 308. How the Legislature wishes to provide notice to its members is a purely legislative matter.

¶ 5 My final concern is ripeness. I disagree with the majority's decision to forego oral argument. I believe oral argument would be beneficial in answering the question of what exactly the Council of Bond Oversight (hereinafter "COB") approved on March 28, 2013. The Applicant claims the bonds and the projects have been approved by the COB. Respondent Elliott asserts the COB has not reviewed or approved specific projects. The March 28, 2013, COB minutes

---

**6.** The "Motion to Dismiss Due to Expiration of Bond Authorization" filed by Respondent Anderson on September 23, 2013, is denied. Additionally, the "Supplemental Motion to Dismiss" filed by Respondent Elliott on September 23, 2013, is denied.

show the COB voted to grant provisional and final approval for authorization of the 2013 Oklahoma State System of Higher Education Master Equipment Lease Program and the 2013 Oklahoma State System of Higher Education Master Real Property Program. The approval was made subject to several conditions one of which is the validation by this Court of the "structure" of those programs. Prior to the vote, the minutes reflect statements made by the State Bond Advisor. One such statement by Mr. Joseph was "[t]he request is to authorize the program for 2013 without any specific projects at this time." Title 62 O.S. Supp.2012, § 695.8(A)(3), provides the COB shall only determine that the **project** has a legal and beneficial purpose which can be legitimately funded by bond or similar indebtedness. A review of a **project** then appears to be a necessary step in the COB approval process. Pursuant to the provisions of 20 O.S.2011, § 14.1, if this Court is satisfied that the obligations have been properly authorized in accordance with the law and that when issued, they will constitute valid obligations, the Court shall render a written opinion approving the obligations. A review of the March 28, 2013, minutes gives me pause as to whether we can find these obligations have been properly authorized if specific projects have not been approved by the COB. In my opinion, whether specific projects were in fact approved by the vote is ambiguous by a reading of these minutes. Therefore, I would grant the request for oral argument.

## ORDER

¶ 1 Two petitions for rehearing are before the Court, one filed by Jerry R. Fent on October 9, 2013, and one filed by Patrick Anderson on October 14, 2013.

¶ 2 The petition for rehearing filed by respondent, Jerry R. Fent, is hereby DENIED.

¶ 3 The petition for rehearing filed by respondent, Patrick Anderson, is hereby DENIED.

¶ 4 DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 28th DAY OF OCTOBER 2013.

¶ 5 COLBERT, C.J., REIF, V.C.J., WATT, EDMONDSON, TAYLOR, COMBS, GURICH, JJ.—concur.

¶ 6 WINCHESTER, J.—Disqualified.

¶ 7 KAUGER, J.—Recused.