2005 OK 90

In the Matter of the Application of the **OKLAHOMA CAPITOL IMPROVEMENT AUTHORITY FOR APPROVAL OF $50 MILLION OKLAHOMA CAPITOL IMPROVEMENT AUTHORITY STATE REGENTS FOR HIGHER EDUCATION ENDOWED CHAIRS FUNDING PROGRAM BONDS, TAXABLE SERIES 2004.**

No. 101,409.

Supreme Court of Oklahoma.

Dec. 13, 2005.

Rehearing Denied Jan. 30, 2006.

W.A. Drew Edmondson, Attorney General for the State of Oklahoma, Lynn C. Rogers, Assistant Attorney General, Gary M. Bush, Oklahoma City, OK, for Applicant.

Protestant Jerry R. Fent, pro se.

Protestant Edwin Kessler, pro se.

Opinion by COLBERT, J.

¶1 The Oklahoma Capitol Improvement Authority (Authority) has applied for this Court's approval of proposed bonds authorized by 70 O.S. Supp.2004 § 4019. Two taxpayers, Edwin Kessler and Jerry R. Fent, have filed protests. They contend section 4019 violates the provisions of the Oklahoma Constitution generally prohibiting debt. We approve the Authority's application.[1]

¶2 The proposed bonds were authorized by the Legislature to increase the state's contributions to the Oklahoma State Regents' Endowment Trust Fund (Trust Fund). The Legislature created the Trust Fund to accumulate private contributions and matching state appropriations to endow "chairs, professorships, lectureships and positions for artists-in-residence" at public institutions of higher education. 70 O.S.2001 & Supp.2004 §§ 3951–52. At the outset, the Trust Fund's principal could not be diminished for any reason and the income from investing the principal was to be used only for the "endowed chairs, professorships, lectureships and positions for artists-in-residence." *Id.* The State Regents for Higher Education (Regents) are the Trust Fund trustees. *Id.* § 3951.

¶3 The Legislature authorized this bond issue because private contributions to the Trust Fund have exceeded matching appropriations.[2] The legislation, codified in part at

---

1. Protestant Fent has filed a motion to dismiss on the basis that the Authority's application no longer exists because the State Bond Advisor's approval has expired and cannot be renewed. After reviewing the record and authorities cited by Fent, we deny the motion to dismiss.

2. The full text of House Bill 1904, 2004 Okla. Sess. Laws Serv. ch. 115, §§ 1–3 (West), is:

An Act relating to education; amending 70 O.S.2001, Section 3951, which relates to higher education endowments; expanding principal of Oklahoma State Regents' Endowment Trust Fund; authorizing additional use for principal of the Trust Fund; authorizing Oklahoma Capitol Improvement Authority to provide advanced funding for certain education program; authorizing Regents for Higher Education to enter into agreements with Authority; authorizing issuance of obligations; providing limitations on obligations; expressing legislative intent; authorizing certain terms and conditions for issuance of obligations; providing for use of interest earnings; exempting certain items from taxation; providing for investment of certain monies; requiring Supreme Court approval as a condition to issuance of obligations; providing for codification; and declaring an emergency.

BE IT ENACTED BY THE PEOPLE OF THE STATE OF OKLAHOMA:

SECTION 1. AMENDATORY 70 O.S.2001, Section 3951, is amended to read as follows:

Section 3951. A. There is hereby created a trust fund to be known as the "Oklahoma State Regents' Endowment Trust Fund." The Oklahoma State Regents for Higher Education shall be the trustees of said Trust Fund.

B. The State Regents shall utilize said Trust Fund to implement the provisions of Section 2 of this act 3952 of this title.

C. The Trust Fund principal shall consist of monies the Legislature appropriates or transfers to the Oklahoma State Regents for Higher Education for the Trust Fund, the proceeds of any obligations issued pursuant to Section 2 of this act and any monies or assets contributed to the Trust Fund from any other source, public or private. Trust Fund principal shall not be diminished for any reason except to retire obligations issued pursuant to Section 2 of this act if the State Regents fail to make such payments as provided in subsection C of Section 2 of this act.

D. Notwithstanding other provisions of law, income and investment return on Trust Fund principal shall accrue to the Trust Fund for use as provided by authorization of the trustees for the purposes provided in this act. No such income or investment return shall be used for administrative expenses; expenses incurred by the State Regents in the administration of the Trust Fund and of the endowment program established by this act shall be paid from monies appropriated to the State Regents' coordinating board for their general operating budget.

SECTION 2. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 4019 of Title 70, unless there is created a duplication in numbering, reads as follows:

A. The Oklahoma Capitol Improvement Authority is hereby authorized, consistent with the statutes pertaining to the Oklahoma State Regents' Endowment Trust Fund, to establish a program to provide for the advance funding of the state's contribution to endowed chairs, professorships, lectureships and positions for artists in residence as provided in Section 3952 of Title 70 of the Oklahoma Statutes at the various institutions in The Oklahoma State System of Higher Education. The Oklahoma State Regents for Higher Education are authorized to enter into agreements with the Authority to provide security for any obligations issued for such purpose.

B. The Authority is hereby authorized to issue and sell obligations in such amounts as shall be needed from time to time for the purposes of obtaining funds for the state's matching contribution for endowed chairs, professorships, lectureships and positions for artists in residence; provided, however, that the total principal amount of such obligations shall not exceed in the aggregate Fifty Million Dollars ($50,000,000.00) outstanding at any one time for the purpose of funding endowed chairs. At least fifty percent (50%) of the endowed chair, professorship or lectureship positions funded as provided for in this subsection shall be for positions that involve research and development. No obligations shall be issued for any endowment account for which matching monies specified in subsection E of Section 3952 of Title 70 of the Oklahoma Statutes have not been received.

C. It is the intent of the Legislature that payments for the purpose of retiring the obligations created pursuant to this section be made by the State Regents from the lump-sum appropriation made pursuant to Section 3 of Article XIII-A of the Oklahoma Constitution. Further, it is the intent of the Legislature to appropriate to the State Regents sufficient monies to allow the State Regents to make payments for the purpose of retiring the obligations created pursuant to this section.

D. The Authority may issue obligations in one or more series and in conjunction with other issues of the Authority.

E. The obligations authorized under this section may be sold at either competitive or negotiated sale, as determined by the Authority, and in such form and at such prices as may be authorized by the Authority. The Authority may enter into agreements with such credit enhancers and liquidity providers as may be determined necessary to efficiently market the obligations. The obligations may mature and have such provisions for redemption as shall be determined by the Authority, but in no event shall the final maturity of such obligations occur later than ten (10) years from the first principal maturity date of any given series.

F. Any interest earnings on funds or accounts created for purposes of this section may be utilized as partial payment of the annual debt service or for purposes directed by the Authority.

G. The obligations issued under this section, the transfer thereof and the interest earned on such obligations, including any profit derived from the sale thereof, shall not be subject to taxation of any kind by the State of Oklahoma, or by any county, municipality or political subdivision therein.

H. The Authority may direct the investment of all monies in any funds or accounts created in connection with the offering of the obligations authorized under this section. This shall not include monies in the Oklahoma State Regents Endowment Trust Fund. The State Regents may place additional restrictions on the investment of such monies if necessary to enhance the marketability of the obligations.

I. No obligations may be issued pursuant to this section until such obligations have been approved by the Supreme Court pursuant to Section 14.1 of Title 20 of the Oklahoma Statutes.

SECTION 3. It being immediately necessary for the preservation of the public peace, health and safety, an emergency is hereby declared to exist, by reason whereof this act shall

section 4019(A), authorizes the Authority to issue the bonds and authorizes the Regents to enter agreements with the Authority to provide the necessary security for the bonds. Section 4019(C) states the Legislature's intent to appropriate sufficient funds each year to allow the Regents to make the bond payments. Additional language amends section 3951 to authorize the Regents to use the Trust Fund principal to make payments on the bonds if the Legislature does not make sufficient appropriations.

¶ 4 The Authority adopted a Resolution to issue the bonds on September 29, 2004, and the Authority and the Regents subsequently entered into an Agreement regarding the security for the bonds and the use of the bond proceeds. The bonds will not be a general obligation of the Authority and each bond will contain a disclaimer strictly limiting the bond holders' interest.

This Bond is not an indebtedness of the State of Oklahoma, nor shall it be deemed to be an obligation of the State of Oklahoma and neither the faith and credit nor the taxing power of the State of Oklahoma or any political subdivision thereof is pledged or may hereafter be pledged to the payment of the principal of or the interest on this Bond or the series of which it forms a part. This Bond is not a general obligation of the Authority nor a personal obligation of the members of the Oklahoma Capitol Improvement Authority, but is a limited obligation payable solely from revenues specifically pledged to its payment.

The Regents will deposit and retain the net proceeds and any income generated by investing the proceeds in a separate account within the Trust Fund. If the Regents do not make the required payments to the Authority, the Authority can require them to disgorge the proceeds and accrued income to make the payments.[3] Bond owners will have a security interest only in (1) the Authority's rights to that special account, and (2) any other funds and accounts payable to the Authority pursuant to its Agreement with the Regents. The bonds will mature in ten years and carry a maximum annual interest rate of 6%.

## DISCUSSION

¶ 5 This Court has exclusive jurisdiction to consider the validity of bond issues proposed by the Authority. 73 O.S. Supp. 2004 § 160. We must be satisfied that the bonds are properly authorized and do not violate the state constitution or the statutes creating the Authority. *Id.* Protestants contend that section 4019 creates a debt in violation of Oklahoma Constitution, article 10, §§ 23–25. While we defer to the Legislature regarding the wisdom of a funding method, we can give no deference on the legal question of whether it would create an unconstitutional debt. *Baker v. Carter*, 1933 OK 484, ¶ 17, 25 P.2d 747, 749; *Boswell v. State*, 1937 OK 727, ¶ 16, 74 P.2d 940, 943.

## I. THE STATUTE AUTHORIZING THE BONDS DOES NOT CREATE UNCONSTITUTIONAL DEBT.

¶ 6 Article 10, section 23 of the Oklahoma Constitution requires a balanced budget and prohibits the creation of any debt *against the state* "regardless of its form or the source of money from which it is to be paid" except as

---

take effect and be in full force from and after its passage and approval.

3. House Bill 1904 created an apparent incongruity. As amended, 70 O.S. Supp.2004 § 3951(C) allows the Regents to use the Trust Fund's principal to repay the bonds while newly-enacted 70 O.S. Supp.2004 § 4019(F) provides that income from the bond proceeds can also be used to repay the bonds. Section 3951(D) was not amended, however, and limits use of the income to the purposes set forth in 70 O.S.2001 § 3952 ("endowed chairs, professorships, lectureships and ... artists-in-residence"). If future Legislatures fail to allocate sufficient funds to repay the bonds, the Regents could be compelled by the

Authority to disgorge the income in apparent violation of section 3951(D). Our primary purpose in construing statutes is to ascertain and follow the Legislature's intent. *Samman v. Multiple Injury Trust Fund*, 2001 OK 71, ¶ 13, 33 P.3d 302, 307. A statute's plain meaning is usually conclusive unless "literal construction produces a result demonstrably at odds with legislative intent." *Id.* Here, the Legislature clearly intended to permit the Regents to use both the bond proceeds *and* income to retire the bonds if necessary. The application of section 3951(D) to limit that authority would thwart the Legislature's intent.

specified in sections 23 through 25, conditions that do not apply in this situation. In the decades since the adoption of these provisions, this Court has recognized that some forms of deficit financing do not offend their intent because the financing is either: (1) not debt in the constitutional sense, or (2) fits within a judicially-defined exception. We have approved self-liquidating bonds where the revenues generated by the funded project provide the mechanism for total repayment. *See, e.g., Baker,* 1933 OK 484, 25 P.2d 747; *In re Okla. Tpk. Auth.,* 1950 OK 208, 221 P.2d 795. We have also approved long-term lease debt. *See, e.g., App. of Okla. Capitol Impr. Auth.,* 1960 OK 207, 355 P.2d 1028; *In re App. of Okla. Capitol Impr. Auth.,* 1998 OK 25, 958 P.2d 759, 787 n. 18 (Wilson, J., dissenting) (calling this exception "future installments for future services"). A third form of financing, "appropriation-risk" debt, does not violate the balanced budget provisions because the bond holders knowingly assume the risk that future Legislatures might not appropriate sufficient funds to repay the bonds. *In re App. of Okla. Capitol Impr. Auth.,* 1998 OK 25, 958 P.2d 759; *Fent v. Okla. Capitol Impr. Auth.,* 1999 OK 64, 984 P.2d 200; *In re App. of Okla. Dev. Fin. Auth.,* 2004 OK 26, 89 P.3d 1075.

¶ 7 The bonds we consider today, however, are unique and need not satisfy any of the exceptions described above. Because these bonds are payable only by the Regents, they cannot become debts of the state as a matter of law. The Regents have the sole constitutional authority to disburse funds appropriated to them in a lump sum by the Legislature. Okla. Const. art. 13–A, § 3; *see also Bd. of Regents of Univ. of Okla. v. Childers,* 1946 OK 212, ¶¶ 3–6, 170 P.2d 1018, 1018–19; *Bd. of Regents of Univ. of Okla. v. Baker,* 1981 OK 160, ¶ 19, 638 P.2d 464, 469. The Legislature cannot be forced to appropriate funds to repay the bonds because it has no authority to dictate such a specific expenditure to the Regents.

¶ 8 We first recognized the special nature of such bonds in 1945. *In re Bd. of Regents of Univ. of Okla.,* 1945 OK 224, 161 P.2d 447. Although the bonds at issue in that case might have qualified as self-liquidating

bonds, that status was not determinative. Instead, this Court relied on *State ex rel. Kerr v. Grand River Dam Auth.,* 1945 OK 9, 154 P.2d 946, to hold that bonds issued by a government entity like the Regents do not violate the balanced budget provisions because the Legislature has no authority to direct the entity's spending decisions. *Bd. of Regents,* 1945 OK 224, ¶ 5, 161 P.2d at 448.

¶ 9 *Board of Regents* adopted in full the analysis in *Kerr,* where the Court concentrated on the special status of the Grand River Dam Authority, an agency that received no state revenue. *Kerr,* 1945 OK 9, ¶¶ 15 & 22, 154 P.2d at 950–51. The Court observed its unique position to interpret and apply the balanced budget provisions because it was "yet within the atmosphere surrounding the adoption [so that] the occasion [was] peculiarly apt to cast further light on 'the intent of its framers and of the people in accepting it.' " *Id.* ¶ 19, 154 P.2d at 950–51. Because the balanced budget provisions were adopted "in a policy of retrenchment" to address the "evil" of "progressively mounting public indebtedness and the undeniable and notorious fact that same was due to the practice of incurring indebtedness through appropriations that exceeded probable revenues," the Court concluded that government entities "whose obligations cannot become debts of the state are not within the[ir] purview." *Id.* ¶¶ 12–15, 154 P.2d at 949–950. Bonds issued by the Grand River Dam Authority, therefore, did not violate the balanced budget provisions; they could never become debts of the state within the meaning of the constitutional balanced budget provisions because bond holders could not resort to the state's taxing power to force repayment. *Id.* ¶ 15, 154 P.2d at 950.

¶ 10 *Board of Regents* extended *Kerr's* reasoning to bonds issued by the Regents. Oklahoma is not alone in this analysis. This reasoning has been adopted in other states where the regents of higher education are created by the constitution as a unique governmental entity:

[I]t has been generally held that if the institution is a distinct ... entity, the resulting liabilities [from bonds proposed by that institution] could not be treated as a

debt of the state within the meaning of constitutional prohibitions or limitations in reference to state indebtedness. *State v. Regents of Univ. Sys. of Georgia,* 179 Ga. 210, 175 S.E. 567, 572 (1934) (citing *Baker,* 1933 OK 484, 25 P.2d 747). Similarly, the bonds we consider today cannot become debts of the state because the Legislature cannot dictate how the Regents allocate their annual appropriation. Okla. Const. art 13A, § 3; *see also Bd. of Regents,* 1946 OK 212, ¶¶ 3–6, 170 P.2d at 1018–19; *Bd. of Regents,* 1981 OK 160, ¶ 19, 638 P.2d at 469. If the Legislature cannot dictate how the Regents allocate their appropriation, there is no legal or practical basis for compelling a future Legislature to appropriate tax money to retire the bonds. "Regardless of the stipulations made, the state . . . could never be called upon to pay these bonds, nor would it be under any obligation, moral or otherwise, to levy any tax for the purpose of repairing any loss that might result . . . in consequence of these transactions. . . ." *Regents of Univ. Sys. of Georgia,* 175 S.E. at 573.

¶ 11 Finally, the Legislature has provided an alternate repayment source. It has amended section 3951(C) to allow the Regents to use the principal of the Trust Fund to repay the bonds. The proceeds from the bonds and the income on those proceeds will accumulate untouched in the Trust Fund. This is the rare case where the borrowed funds will never be expended and will remain available to retire the bonds in full if a future Legislature fails to appropriate sufficient new funds to the Regents. We conclude, therefore, that the proposed bonds will never become a state debt and thus do not violate article 10, sections 23 through 25 of the Oklahoma Constitution.

## II. THE STATUTE AUTHORIZING THE BONDS DOES NOT CONFLICT WITH THE AUTHORITY'S OR THE REGENTS' STATUTORY POWER.

■ ¶ 12 Protestant Fent also contends that neither the Authority nor the Regents are authorized to issue bonds for wages and salaries. The statutes establishing the Authority empower it to do certain things. 73 O.S.2001 & Supp.2004 §§ 151–332. While they generally empower it to issue bonds for the construction of highways or buildings, they do not limit the Authority's power to those purposes. Moreover, while 70 O.S.2001 & Supp.2004 §§ 4001–4019 provide only limited bond issuing authority to the Regents, it is not the Regents who will issue the bonds and section 4019 expressly empowers the Authority to issue bonds for the Trust Fund—a fund created precisely for paying wages and salaries.

¶ 13 Finally, section 4019 does not conflict with the Regents' other duties and authority. Section 3951 appoints the Regents trustees for the Trust Fund. Section 4019 authorizes the Regents to enter into agreements with the Authority to issue the proposed bonds for the Trust Fund, a power that only enhances the Regents' ability to fulfill their duty as trustees.

## CONCLUSION

¶ 14 The statute authorizing the proposed bonds does not run afoul of Oklahoma's constitutional prohibitions against debt because the bonds will not be a debt of the state. It also does not otherwise exceed or conflict with the Authority's statutory power or duties.

**APPLICATION FOR APPROVAL OF $50 MILLION OKLAHOMA CAPITOL IMPROVEMENT AUTHORITY "STATE REGENTS FOR HIGHER EDUCATION ENDOWED CHAIRS FUNDING PROGRAM BONDS, TAXABLE SERIES 2004" APPROVED.**

WATT, C.J., WINCHESTER, V.C.J., HARGRAVE, EDMONDSON and COLBERT, JJ., concur.

KAUGER, J., concurring specially.

LAVENDER and OPALA, JJ., concur in part, dissent in part.

TAYLOR, J., not participating.

KAUGER, J., with whom, WATT, C.J., and EDMONDSON, J., joins, concurring specially.

¶ 1 The Oklahoma State Regents' Endow-

ment Trust Fund [1] (Trust Fund) was created by the Legislature in 1989 to accept private contributions and match them with state funds to endow "chairs, professorships, lectureships and positions for artists-in-residence" at Oklahoma's public higher education institutions.[2] Each state institution is permitted to accept private contributions for the endowment program, which may be deposited in either the Trust Fund, the university's own endowment fund or an account with the university's foundation.[3] The institution may apply to the State Regents for Higher Education (State Regents/Regents), who act as Trustees for the Trust Fund,[4] for matching funds to be dedicated in a new account within the Trust Fund, provided the institution has collected matching private contributions totaling at least one-half of its requested Trust Fund account.[5] Once the Regents approve the account, the institution has three years to collect the remaining matching private contributions, and cannot receive any income from the Trust Fund account until that time.[6] While the institution may deposit the private contributions in either one of three places, the State Regents may only deposit the state matching funds in accounts within the Trust Fund.[7] The principal may not be invaded, except to retire the bonds at issue here.[8]

¶2 The proposed bonds were authorized by the Legislature during the 2004 regular session. The legislation [9] creates a new section of Title 70 of the Oklahoma Statutes, codified at § 4019, which authorizes the Regents to obtain up to $50 million in bonds issued through the Oklahoma Capital Improvement Authority (OCIA) to be added to the principal of the Trust Fund for the purposes of matching private contributions previously made.[10] The Legislature states its

1. An endowment fund has been defined as "a permanent fund, the purpose of which is to yield income for the support of an institution." *Harris v. City of Fort Worth*, 142 Tex. 600, 608, 180 S.W.2d 131 (1944).

2. Title 70 O.S.2001 §§ 3951–52. These provisions were amended as part of the act authorizing the bond issue.

3. Title 70 O.S.2001 § 3952(F) provides in pertinent part:
   "Any institution which provides matching monies shall deposit the matching monies in one of the following:
   1. The Trust Fund;
   2. An endowment matching fund of the institution;
   3. A fund of a foundation whose sole beneficiary is that institution...."

4. Title 70 O.S.2001 § 3952(A) provides:
   "The principal held in the Oklahoma State Regents' Endowment Trust Fund shall be made available for the establishment of and allocation to endowment accounts within the Trust Fund for the benefit of individual public institutions of higher education within this state."

5. Title 70 O.S.2001 § 3952(C) provides in pertinent part:
   "... To be initially eligible for an endowment account within the Trust Fund, an institution shall have on deposit as provided in subsection F of this section an amount equal to at least one-half (½) of the requested amount...."

6. Title 70 O.S.2001 § 3952(D) provides in pertinent part:

"The total matching requirement shall be equal to the amount of the requested endowment account in each instance and shall be deposited within a period to be established by the State Regents. Said period shall not be greater than three (3) years in length...."

7. Title 70 O.S. Supp.2004 § 3951(C) provides:

"The Trust Fund principal shall consist of monies the Legislature appropriates or transfers to the Oklahoma State Regents for Higher Education for the Trust Fund, the proceeds of any obligations issued pursuant to Section 2 of this act and any monies or assets contributed to the Trust Fund from any other source, public or private. Trust Fund principal shall not be diminished for any reason except to retire obligations issued pursuant to Section 2 of this act if the State Regents fail to make such payments as provided in subsection C of Section 2 of this act."

8. Title 70 O.S. Supp.2004 § 3951(C), see note 7, supra.

9. 2004 *Okla. Sess. Laws. Serv. ch. 115*, §§ 1–3 (H.B.1904) (West).

10. Title 70 O.S. Supp.2004 § 4019 provides:

"A. The Oklahoma Capitol Improvement Authority is hereby authorized, consistent with the statutes pertaining to the Oklahoma State Regents' Endowment Trust Fund, to establish a program to provide for the advance funding of the state's contribution to endowed chairs, professorships, lectureships and positions for artists in residence as provided in Section 3952 of Title 70 of the Oklahoma Statutes at

intent to appropriate sufficient sums to make the bond payments as part of its "lump-sum" appropriation to the Regents pursuant to the Okla. Const., art. 13–A, § 3.[11] However, the Act also creates an alternative source by amending 70 O.S. Supp.2004 § 3951 to permit the Regents to invade the principal of the Trust for the purpose of making the required bond payments.[12]

the various institutions in The Oklahoma State System of Higher Education. The Oklahoma State Regents for Higher Education are authorized to enter into agreements with the Authority to provide security for any obligations issued for such purpose.

B. The Authority is hereby authorized to issue and sell obligations in such amounts as shall be needed from time to time for the purposes of obtaining funds for the state's matching contribution for endowed chairs, professorships, lectureships and positions for artists in residence; provided, however, that the total principal amount of such obligations shall not exceed in the aggregate Fifty Million Dollars ($50,000,000.00) outstanding at any one time for the purpose of funding endowed chairs. At least fifty percent (50%) of the endowed chair, professorship or lectureship positions funded as provided for in this subsection shall be for positions that involve research and development. No obligations shall be issued for any endowment account for which matching monies specified in subsection E of Section 3952 of Title 70 of the Oklahoma Statutes have not been received.

C. It is the intent of the Legislature that payments for the purpose of retiring the obligations created pursuant to this section be made by the State Regents from the lump-sum appropriation made pursuant to Section 3 of Article XIII–A of the Oklahoma Constitution. Further, it is the intent of the Legislature to appropriate to the State Regents sufficient monies to allow the State Regents to make payments for the purpose of retiring the obligations created pursuant to this section.

D. The Authority may issue obligations in one or more series and in conjunction with other issues of the Authority.

E. The obligations authorized under this section may be sold at either competitive or negotiated sale, as determined by the Authority, and in such form and at such prices as may be authorized by the Authority. The Authority may enter into agreements with such credit enhancers and liquidity providers as may be determined necessary to efficiently market the obligations. The obligations may mature and have such provisions for redemption as shall be determined by the Authority, but in no event shall the final maturity of such obligations occur later than ten (10) years from the first principal maturity date of any given series.

F. Any interest earnings on funds or accounts created for purposes of this section may be utilized as partial payment of the annual debt service or for purposes directed by the Authority.

G. The obligations issued under this section, the transfer thereof and the interest earned on such obligations, including any profit derived from the sale thereof, shall not be subject to taxation of any kind by the State of Oklahoma, or by any county, municipality or political subdivision therein.

H. The Authority may direct the investment of all monies in any funds or accounts created in connection with the offering of the obligations authorized under this section. This shall not include monies in the Oklahoma State Regents Endowment Trust Fund. The State Regents may place additional restrictions on the investment of such monies if necessary to enhance the marketability of the obligations.

I. No obligations may be issued pursuant to this section until such obligations have been approved by the Supreme Court pursuant to Section 14.1 of Title 20 of the Oklahoma Statutes."

**11.** Title 70 O.S. Supp.2004 § 4019, see note 10, supra.

**12.** Title 70 O.S. Supp.2004 § 3951 provides:

"A. There is hereby created a trust fund to be known as the 'Oklahoma State Regents' Endowment Trust Fund.' The Oklahoma State Regents for Higher Education shall be the trustees of said Trust Fund.

B. The State Regents shall utilize said Trust Fund to implement the provisions of Section 2 of this act 3952 of this title.

C. The Trust Fund principal shall consist of monies the Legislature appropriates or transfers to the Oklahoma State Regents for Higher Education for the Trust Fund, the proceeds of any obligations issued pursuant to Section 2 of this act and any monies or assets contributed to the Trust Fund from any other source, public or private. Trust Fund principal shall not be diminished for any reason except to retire obligations issued pursuant to Section 2 of this act if the State Regents fail to make such payments as provided in subsection C of Section 2 of this act.

D. Notwithstanding other provisions of law, income and investment return on Trust Fund principal shall accrue to the Trust Fund for use as provided by authorization of the trustees for the purposes provided in this act. No such income or investment return shall be used for administrative expenses; expenses incurred by the State Regents in the administration of the Trust Fund and of the endowment program established by this act shall be paid from monies appropriated to the State Regents' coordi-

¶3 The OCIA adopted a Resolution to issue the bonds on September 29, 2004, and the OCIA and the Regents entered an Agreement for the distribution of the bond proceeds on October 1, 2004. According to these documents, each bond will contain a disclaimer stating that it is not a State debt, and that neither the State's "faith and credit" nor its taxing power is pledged to the bond's repayment.[13] The bonds will mature in ten years and carry a maximum annual interest rate of 6%. They will be sold at a price reflecting an underwriter's discount not exceeding 0.4% of the principal of the bonds ($200,000) and an original issue discount not exceeding 2% of the principal of the bonds ($1,000,000). OCIA will deposit the proceeds with the State Treasurer, who after retaining an unspecified amount for the costs of administration will transmit the net proceeds to the Regents. The Regents will place the net proceeds in a separate endowment account within the Trust Fund itself. The Regents will also deposit any income generated from the investment of the bond proceeds in the same account. The OCIA will notify the Regents annually of the amount due for fees, principal, and interest, and the Regents will make monthly payments to the OCIA.

nating board for their general operating budget."

13. *Abstract of Record* at p. 14.

14. Title 73 O.S. Supp.2004 § 160 provides in pertinent part:

"The Oklahoma Capital Improvement Authority may file an application with the Supreme Court of Oklahoma for the approval of bonds issued hereunder, and exclusive original jurisdiction is hereby conferred upon the Supreme Court to hear and determine each application . . . If the court shall be satisfied that the bonds or any portions thereof have been properly authorized in accordance with this act and the Constitution of Oklahoma, and that when issued they will constitute valid obligations in accordance with their terms, the court shall render its written opinion approving the bonds and shall fix the time within which a petition for rehearing may be filed . . . ."

## I.

## THIS BOND ISSUE DOES NOT CREATE A DEBT PROHIBITED BY THE OKLAHOMA CONSTITUTION

¶4 Protestants contend that § 4019 creates a debt in violation of the Okla. Const., art. 10, §§ 23–25. This Court has exclusive jurisdiction to consider the validity of bond issues proposed by the OCIA.[14] We must be satisfied that the bonds are "properly authorized in accordance" with the Constitution and the statutes creating the Authority.[15]

¶5 The right to declare the fiscal policy of the state is vested exclusively in the Legislature, and we are not to judge how wise a particular course of action is; rather, we inquire only if the course of action complies with the constitutional limitations placed on the Legislature.[16] The Protestants bear a heavy burden of showing that the bond issue will violate the Constitution, and we are "bound to accept an interpretation that avoids constitutional doubt as to the validity of the provision." [17] Therefore, we must determine in the first instance whether the bonds create a debt in the constitutional sense. This Court has held that the purpose of the Okla. Const., art. 10, § 23,[18] is to prohibit the current Legislature from tying the fiscal hands of future Legislatures, so that each Legislature retains its ability to agree modify or repeal laws previously enacted.[19]

15. Title 73 O.S. Supp.2004 § 160, see note 14, supra.

16. *In re Application of Okla. Capitol Impr. Auth.,* 1998 OK 25,¶9, 958 P.2d 759, *cert. denied, Fent v. Oklahoma Capitol Impr. Auth.,* 525 U.S. 874, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998).

17. *In re Application of Okla. Capitol Impr. Auth.,* see note 16 at ¶8 [quoting *Gilbert Cent. Corp. v. State,* 1986 OK 6, ¶7, 716 P.2d 654].

18. The Okla. Const., art. 10, § 23 was amended by a vote of the people in 1941 from a provision containing a debt ceiling to a provision requiring a balanced budget and generally prohibiting State debt. We have treated the ultimate purpose behind this section the same under both provisions.

19. *Boswell v. State,* 1937 OK 727, ¶30, 74 P.2d 940.

¶ 6 With that purpose in mind, as early as 1933 in *Baker v. Carter*, 1933 OK 484, ¶ 59, 25 P.2d 747, this Court addressed whether a bond for the construction of student housing at Oklahoma A & M College, to be repaid solely from the rents of the housing, violated the Okla. Const., art. 10 § 23. After considering the state of the law in other jurisdictions, this Court adopted the "self-liquidating" rule and held:

"... a limitation upon state or municipal indebtedness is not violated by an obligation which is payable out of a special fund, if the state or municipality is not liable to pay the same out of its general fund should the special fund prove to be insufficient, and the transaction by which the indebtedness is incurred cannot in any event deplete the resources of the state or the municipality...."

Therefore, in order for a bond to be "self-liquidating" and not create debt in a constitutional sense, the state's general fund must be free from all liability to pay the obligation imposed by the bond. In *In re Okla. Tpk. Auth.*, 1950 OK 208, ¶ 28, 221 P.2d 795, the Court considered an application for the issuance of bonds for the purpose of improving roads where the method of repayment was solely from the collection of tolls on the improved roads. In upholding the bonds against an art. 10, § 23 challenge, the Court held:

"... [i]t is thoroughly well settled by former decisions of this Court that such bonds, and that these bonds, do not constitute an indebtedness against the State of Oklahoma as contemplated in the above stated sections of the Constitution...."

¶ 7 The Court has also considered situations where future state revenues might be used for repayment, but where alternative sources of funds to pay the bonds existed if the Legislature failed to appropriate future funds for repayment. For example, in *Application of Okla. Capitol Impr. Auth.*, 1960 OK 207, 355 P.2d 1028, this Court upheld the issuance of improvement bonds where the revenue for repayment was to be generated from leases signed by state agencies. Even though those agencies relied on future legislative appropriations, this Court held that the liability of the state was incurred only with each year's lease, and if the Legislature stopped funding the leases, the Authority was free to seek other tenants, thereby providing the required revenue stream.

¶ 8 In three recent cases, we have considered whether bond issues that create "appropriation-risk" debt, where bond holders knowingly assume the risk that future Legislatures might not appropriate funds for the repayment of the bonds, are constitutional.[20] In *In re Application of Okla. Capitol Impr. Auth.*, 1998 OK 25, 958 P.2d 759, *cert. denied, Fent v. Oklahoma Capitol Impr. Auth.*, 525 U.S. 874, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998). we upheld the issuance of highway bonds, the payment of which was guaranteed with dedicated tax revenue, a portion of the assessments made to an environmental fund, and Rainy Day Funds that were currently available to that Legislature. We specifically relied on our previous holding in *Application of Okla. Capitol Impr. Auth*, supra, and *In re Oklahoma Tpk. Auth.*, supra, for the proposition that the Legislature had in fact appropriated specific streams of revenue to make the bonds "self-liquidating." [21] In *Fent v. Oklahoma Capitol Impr. Auth.*, 1999 OK 64, 984 P.2d 200, *cert. denied* 528 U.S. 1021, 120 S.Ct. 531, 145 L.Ed.2d 411 (1999) this Court approved a bond issue for various government projects, holding that the bonds did not create constitutional debt.[22] Finally, in *In re Application of Okla. Dev. Fin. Auth.*, 2004 OK 26, 89 P.3d 1075, we approved bonds to be issued under the Oklahoma Quality Jobs Incentive Leverage Act, 68 O.S. Supp.2002 § 3651, et seq.[23] The Court discussed the

---

**20.** *In re Application of Okla. Capitol Impr. Auth.*, see note 16, supra; *Fent v. Oklahoma Capitol Impr. Auth.*, 1999 OK 64, 984 P.2d 200, *cert. denied* 528 U.S. 1021, 120 S.Ct. 531, 145 L.Ed.2d 411 (1999); *In re Application of Okla. Dev. Fin. Auth.*, 2004 OK 26, 89 P.3d 1075.

**21.** *In re Application of Okla. Capitol Impr. Auth.*, see note 16, supra., at ¶¶ 13–14.

**22.** *Fent v. Oklahoma Capitol Impr. Auth.*, see note 20, supra., at ¶ 10.

**23.** *In re Application of Okla. Dev. Fin. Auth.*, see note 20, supra., at ¶¶ 43–46.

various repayment methods created by the Act that would make the bonds at issue "self-liquidating" and compared the bonds at issue favorably to those this Court had approved in *In re Application of Okla. Capitol Impr. Auth.*, supra.[24]

¶ 9 Although the bonds at issue here resemble those we have previously approved there are some major differences. The Legislature has provided an alternative repayment source from funds already existing, instead of future revenues generated from either the project itself or dedicated tax revenue. By amending 70 O.S. Supp. 2004 § 3952(C) as part of the implementing legislation, the Legislature has allowed the Regents to invade the already existing principal of the Trust Fund **ONLY** for the purpose of bond repayment if insufficient legislative appropriations are made. Because both the state and private parties have contributed significant sums of money to the Trust Fund over the past 16 years, there may be likely sufficient principal in the Trust Fund to repay the entire obligation at any time. Therefore, this case is clearly distinguishable from *Application of Okla. Educ. Television Auth.*, 1954 OK 219, 272 P.2d 1027, where this Court initially disapproved of the issuance of bonds to be repaid from the Public Building Fund, an already existing fund, with revenues accruing from other existing projects in the future. However, on rehearing, the Court modified its holding and noted that:

"... It was not intended by the majority opinion to restrict the Authority from issuing bonds payable from funds now on hand ..."

¶ 10 This is that rare case where the proposed bonds are secured with already existing funds, appropriated by past Legislatures, that cannot be used for any purpose other than the repayment of the bonds at issue. While Protestant Fent argues that the private contributions made to the Fund may not be used for repayment, we cannot find any text in the Act to support such a construction; rather it would appear that the Regents may invade ANY of the principal to repay the bonds, and may do so ONLY for that purpose.

¶ 11 The underlying rationale of the "special fund"/"self-liquidating" bond doctrine is that there is no need for future legislative contributions to fund repayment of the bonds. The bonds at issue here will not require future contributions to the trust fund in order for the State Regents to meet the bond obligations.[25] This bond does not create a debt within the meaning of the Okla. Const., art. 10, § 23.

## II.

### THE PROTESTANTS' REMAINING ARGUMENTS ARE UNPERSUASIVE

¶ 12 Protestant Fent has raised two additional arguments which merit brief discussion. First, Fent argues that these bonds do not fund any buildings; therefore, they may not be issued through the OCIA because they are inconsistent with the OCIA's statement of purpose as expressed by the Legislature at 73 O.S.2001 § 151 [26] and exceed the powers granted to the OCIA in 73 O.S.2001 § 161.[27] Title 73 O.S.2001 § 161 does enu-

---

**24.** *In re Application of Okla. Dev. Fin. Auth.*, see note 20, supra., at ¶¶ 38–42.

**25.** Future Legislatures are of course free to appropriate additional sums of money to the State Regents, which the Regents may decide to use for bond repayments consistent with the intent expressed in 70 O.S. Supp.2004 § 4019(C). Our only inquiry is whether future Legislatures are obligated to do so.

**26.** Title 73 O.S.2001 § 151 provides:
"The purpose of this act is to provide adequate and suitable space for offices and other necessary uses for all departments and agencies of the state, particularly the ones now paying or

which hereafter may be required to pay rent, and for the purpose of increasing the efficiency of the operation of state departments and agencies, and to eventually cause the State of Oklahoma to receive all the benefit of the rents now being paid by state departments and agencies. It shall also be the purpose of this act to provide an improved and expanded highway infrastructure for the health, safety, and welfare of the traveling public in this state and for the continued economic development of this state."

**27.** Title 73 O.S.2001 § 161 provides:

merate the powers of the OCIA. However, the list of powers contained within § 161 is not exhaustive. Rather, § 161's grant of authority is made "[i]n addition to all powers expressly conferred." The Legislature expressly conferred to the OCIA the authority to issue these bonds in 70 O.S. Supp.2004 § 4019,[28] and such authority is in complete harmony with the powers of the OCIA under the relevant provisions of 73 O.S.2001 § 161.

¶ 13 Finally, Fent argues that the necessary agreements between OCIA and the State Regents for Higher Education authorized by 70 O.S. Supp.2004 § 4019(A),[29] are in conflict with the provisions of 70 O.S.2001 § 4001(C),[30] because this bond does not fund

"In addition to all other powers expressly conferred, the Authority is hereby authorized and empowered:

1. To adopt bylaws for the regulation of its affairs and the conduct of its business;

2. To adopt an official seal and alter the same at pleasure;

3. To fix and revise from time to time rent for the use of any Authority building; provided that the rents when so fixed, plus revenues derived from other sources, shall produce sufficient revenue:

   a. to pay the annual cost of the operation, maintenance, and repair of such building,

   b. to pay as and when due the principal and interest on the bonds issued to pay for such building, and

   c. to accumulate and maintain reserves for such purposes;

4. To acquire, hold and dispose of real and personal property in the exercise of its powers and the performance of its duties under this act;

5. To acquire by purchase or otherwise, on such terms and conditions and in such manner as it may deem proper, or by the exercise of the power of condemnation in the manner hereinafter provided, such public or private property and interests therein as it may deem necessary for carrying out the provisions of this act. The exercise of the power of condemnation shall be in accordance with and subject to the provisions of any and all existing laws and statutes applicable to the exercise of the power of condemnation of property for public use. In any condemnation proceedings the court having jurisdiction of the suit, action or proceeding may make such orders as may be just to the Authority and to the owners of the property to be condemned and may require an undertaking or other security to secure such owners against any loss or damage by reason of the failure of the Authority to accept and pay for the property, but neither such undertaking or security nor any act or obligation of the Authority shall impose any liability upon the state or the Authority except such as may be paid from the funds provided under the provisions of the act;

6. To make and enter into all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers under this act, and particularly to make and enter into contracts and agreements with the departments and agencies of the State of Oklahoma and/or federal government relating to the rent, amortization of cost and use of the building by such departments and agencies, or relating to the construction, improvement, repair, and maintenance of the highway infrastructure in this state;

7. To employ employees and agents as may be necessary in its judgment, including but not limited to legal counsel and such other professionals as may be needed for the issuance and administration of bonds issued under the provisions of this title and to fix their compensation; provided, that all such expenses shall be payable solely from the proceeds of bonds issued under this act or from revenues derived from the building;

8. To receive and accept from any federal agency grants or payments for or in aid of the construction of any project, and to receive and accept aid or contributions from any source of either money, property, labor or other things of value to be held, used and applied only for the purposes for which such grants and contributions may be made;

9. To do any and all things necessary to comply with rules, regulations or requirements of any state or federal agency administering any law enacted by the Congress of the United States to aid or encourage the construction or use of such building; and

10. To do all things necessary or convenient to carry out the powers expressly granted in this act."

28. Title 70 O.S. Supp.2004 § 4019(A), provides in pertinent part:

"The Oklahoma Capitol Improvement Authority is hereby authorized, consistent with the statutes pertaining to the Oklahoma State Regents' Endowment Trust Fund, to establish a program for the advance funding of the state's contribution to endowed chairs...."

Further, 70 O.S. Supp.2004 § 4019(B), provides in part:

"The Authority is hereby authorized to issue and sell obligation in such amounts as shall be needed from time to time for the purposes of obtaining funds for the state's matching contribution for endowed chairs...."

29. Title 70 O.S. Supp.2004 § 4019(A), see note 28, supra.

30. Title 70 O.S.2001 § 4001(C) provides:

"Other state agencies or subdivisions of the state may enter into cooperative agreements

the types of tangible facilities and services enumerated under § 4001(C). This argument must fail for several reasons. First, it is clear from the plain text of § 4001(C), that the Board of Regents referred to therein are those of the individual college and university systems, not the State Regents of Higher Education. Second, a plain reading of that provision reveals that the intent of the Legislature in enacting § 4001(C) was to permit those individual boards to make agreements for the use of financed buildings and services with other state agencies. The provision deals only with use agreements, not with any other type of agreement, such as the bond servicing agreement that is challenged here. Finally, the provision is permissive, not mandatory, and therefore it cannot be read to prohibit other types of agreements.

## III.

## CONCLUSION

¶ 14 It is not for the Court to judge how wise a legislative course of action is, it is only whether such action offends the constitution. The basic purpose behind the Okla. Const., art. 10, § 23, is to prevent the current Legislature from spending money it does not have. When the Legislature creates a bond issue, backed by currently existing funds in a trust fund, which may only be spent for the repayment of the bond, a debt is not created in the constitutional sense.

with the regents of the universities or colleges on projects for the primary benefit of such university or college, and make use of facilities and services financed by bonds issued by the university or college, as authorized herein and under the terms and conditions of this section."