2014 OK CIV APP 84

**ATRIUM TRS II, L.P., A Delaware Limited Partnership d/b/a Renaissance Oklahoma City Convention Center Hotel, Plaintiff/Appellant,**

v.

**UNIVERSITY OF CENTRAL OKLAHOMA, Defendant/Appellee.**

**No. 111,301.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 15, 2014.

Anthony D. Gould, Joshua C. Stockton, Brown & Gould, PLLC, Oklahoma City, Oklahoma, and Steven M. Rudner, Rudner Law Offices, Dallas, Texas, for Plaintiff/Appellant.

James Bradley Morelli, Edmond, Oklahoma, for Defendant/Appellee.

WM. C. HETHERINGTON, JR., Vice–Chief Judge:

¶ 1 In this breach of contract action filed by ATRIUM TRS II, L.P., d/b/a Renaissance Oklahoma City Convention Center Hotel ("Hotel") against Defendant University of Central Oklahoma ("UCO"), Hotel appeals

---

the trial court's order denying its partial motion for summary judgment and granting judgment in favor of UCO. We reverse the order and remand for further proceedings.

### FACTS

¶2 The material facts of this case are undisputed. A contract was executed by representatives of Hotel and UCO April 25, 2008, which reserved hotel rooms, meeting rooms, and banquet facilities and further arranged for food and beverages service at Hotel during a ten-day athletic event UCO was planning in July 2010 (Booking Contract). The Booking Contract's "method of payment" was by either credit, or "in the event that credit is not approved," UCO agreed to pay "an advance deposit in an amount to be determined by [Hotel]" with the outstanding balance due and payable upon receipt of Hotel's invoice.

¶3 It is undisputed UCO cancelled the event *at the Hotel* on July 6, 2009 and that "the event took place elsewhere." After UCO refused to pay Hotel's demand for payment under the Booking Contract's liquidated damages provision,[1] Hotel filed its petition alleging breach of contract. UCO answered, denying the majority of allegations and raising, as affirmative defenses, invalidity of the contract under the Oklahoma Constitution and State Finance Act, or if valid, unenforceability of the contract's liquidated damages clause.

¶4 Hotel later moved for partial motion for summary judgment, arguing there is no substantial controversy as to any material fact essential to finding that a contract was formed, UCO breached the contract, and damages were a direct result of the breach. Hotel further argues 1) the Booking Contract is constitutional on its face because it contains a cancellation clause which UCO could exercise at any time, and 2) the payment obligations in the Booking Contract were "self-liquidating" and do not place an obligation on the Legislature to appropriate monies. Hotel lastly argues UCO is estopped from claiming the contract language was legally insufficient because its own legal counsel reviewed and approved it.

¶5 In UCO's two-page "Response to [Hotel's] Motion for Summary Judgment," it does not dispute any of Hotel's statement of thirteen uncontroverted material facts and again argues the Booking Contract is "void": 1) because it covers more than one fiscal year in violation of "Article X, 23 and 62 O.S. 34.41 [2] and 34.49," [3] and 2) because it lacks

---

1. The Booking Contract's cancellation clause provides for the payment of "liquidated damages" from UCO "if it cancels or otherwise essentially abandons its planned use of the Room Night Commitment." Pursuant to the same contract, the amount of liquidated damages would be calculated on an increasing scale, the lowest amount of which is set at "20% of Estimated Revenue," if the cancellation occurs on "Date of Agreement to 365 days prior (1 year)." Therefore, it would appear that immediately upon execution of the 2008 Contract, a debt or obligation to pay either an advance deposit (date due not defined) or liquidated damages was imposed upon UCO, which was dependent upon UCO's contractual need to make an advance deposit and/or the occurrence of and date of the cancellation, which *might* be owed in a subsequent fiscal year, contrary to Art. 10, 23 of the Oklahoma Constitution.

2. Section 34.41, part of the State Finance Act, 62 O.S.2009 34 et seq., provides:

   Appropriations shall not be available for contractual or expenditure purposes until allotted as provided in the Oklahoma State Finance Act. Appropriations made by the Legislature to each state agency are hereby declared to be maximum, conditional and proportionate appropriations. *The purpose of this section is to make appropriations payable in full in the amounts named only in the event that the estimated budget resources within each state fund during each fiscal year are sufficient to pay all of the appropriations for such fiscal year in full. It is also the purpose of this provision to ensure that there shall be no overdraft or deficit created in the several funds of the state at the end of any fiscal year,* and the *Director of the Office of Management and Enterprise Services is directed and required so to administer the Oklahoma State Finance Act to prevent such overdraft or deficit.* (Emphasis added.)

3. Section 34.49 of the same Act, in relevant part, provides:

   A. Appropriations and/or federal funds shall be allotted for each agency as provided by the language of the legislative appropriation and other applicable state law. Items may be allotted on a monthly, quarterly, semiannual or annual basis upon the written request of the

non-appropriation contract language required in *U.C. Leasing Inc. v. State ex rel. State Board of Public Affairs*, 1987 OK 43, 737 P.2d 1191. UCO further argues "the penalty for cancellation, in and of itself, violates Article X, 23 and 62 O.S. 34.41 and 34.49 in that the penalty encumbers funds not yet appropriated" and in Oklahoma, estoppel is not applied against the State.

¶ 6 In its "Final Judgment," the trial court, upon consideration of the parties' submissions, arguments of their counsel at a hearing in open court, and review of the pleadings, concluded the Booking Contract "violates the Oklahoma Constitution Article X, 23, and is thus unenforceable." In light of that specific holding, the court ordered Final Judgment "should be and is hereby entered in favor of [UCO] and against [Hotel]." [4]

## STANDARD OF REVIEW

¶ 7 This matter stands submitted for accelerated appellate review on only trial court record pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S.2011, ch. 15, app. 1. The appellate standard of review for a trial court's grant of summary judgment is *de novo. Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. This court gives no deference on the legal question of whether a contract created an unconstitutional debt.

*In re Oklahoma Capitol Improvement Authority*, 2005 OK 90, ¶ 5, 130 P.3d 232, 235.

## ANALYSIS

¶ 8 Our research reveals no Oklahoma or other state court cases addressing whether a booking contract or similar contract for future services violates § 23 or related debt limitation provisions, § 24–26 [5] of the Oklahoma Constitution. Although this legal question is undecided by Oklahoma courts, this appeal does not address a first impression issue in light of the Supreme Court's holding in a case reviewing the unconstitutionality of certain highway improvement bonds, *In re Oklahoma Capitol Improvement Authority*, 1998 OK 25, ¶ 32, 958 P.2d 759, 770, that "the correct analysis turns not on the type of instrument involved but, rather, on whether an enforceable obligation is created beyond the fiscal year."

¶ 9 Art. 10, 23 of the Oklahoma Constitution provides, in relevant part, "[a]ny department, institution or agency of the state operating on revenues derived from any law or laws which allocate the revenues thereof to such department, institution or agency shall not incur obligations in excess of the unencumbered balance of cash on hand." This constitutional section "requires a balanced budget and prohibits the creation of any debt

---

agency and *the approval of the Director of the Office of Management and Enterprise Services.*

\* \* \*

E. .... The *Director of the Office of Management and Enterprise Services* shall not allot to any agency during any fiscal year, an amount which will be in excess of the amount of revenue collected and allocated to appropriations made to such agency. (Emphasis added.)

4. We note for the record UCO neither filed a counter-motion for summary judgment nor orally moved for one at the hearing on Hotel's motion for partial summary adjudication. "An appeal may in some cases be from an interlocutory summary adjudication if it can be treated as final." *Mann v. State Farm Mut. Auto. Ins. Co.*, 1983 OK 84, ¶ 15, 669 P.2d 768, 772. It is clear from the order on appeal that the trial court treated its ruling on Hotel's breach of contract claim as "final," *i.e.*, dispositive of the entire action.

5. Article 10, 24 provides:

In addition to the *above limited power to contract debts*, the State *may contract* debts to repel invasion, suppress insurrection or to defend the State in war.... (Italics added.)

Article 10, 25 provides, in relevant part:

Except the debts specified in [§ 23] and [§ 24] of this article, *no debts shall be hereafter contracted by or on behalf of this State*, unless such debt shall be authorized by law for some work or object, to be distinctly specified therein; and such law shall impose and provide for the collection of a direct annual tax to pay, and sufficient to pay, the interest on such debt as it falls due, and also to pay and discharge the principal of such debt within twenty-five years from the time of the contracting thereof. No such law shall take effect until it shall, at a general election, have been submitted to the people and have received a majority of all the votes cast for and against it at such election.... (Italics added.)

Section 26 of Article 10, in summary, limits the ability of public bodies, including school districts, to pledge revenues of future fiscal years by incurring or creating multi-year contractual financial obligations.

against the state 'regardless of its form or the source of money from which it is to be paid' except as specified in [§ ] 23 through [§ ] 25, conditions that do not apply in this situation." *In re Oklahoma Capitol Improvement Authority,* 2005 OK 90, ¶ 6, 130 P.3d 232, 235–236.

¶ 10 Both parties rely on the same case to support their respective arguments, *U.C. Leasing Inc. v. State ex rel State Board of Public Affairs,* 1987 OK 43, 737 P.2d 1191, in which the Supreme Court held a state agency's long-term equipment lease did not violate § 23. The decision in *U.C. Leasing* was based on the presence of specific language in the lease which would release the obligation of the state agency to make lease payments beyond the current fiscal year if the Legislature failed to allocate funds for payments during the next fiscal year (commonly known as a non-appropriation clause). This clause prevented violation of § 23's debt limitation, about which the Court held, "the obligation was *not absolute and in all events binding upon the State at the time of [the lease's] execution,* but was made contingent upon continued funding on a fiscal year basis by the Legislature continuing to appropriate funds to satisfy the obligation." (Italics added.) *U.C. Leasing,* 1987 OK 43, ¶ 21, 737 P.2d at 1195.

¶ 11 The Supreme Court has considered in several cases whether various bonds violate Oklahoma's constitutional debt limitation provisions, § 23–25, and has recognized "some forms of deficit financing do not offend their intent because the financing is either: (1) not a debt in the constitutional sense or (2) fits within a judicially defined exception." *Id.* For the same reasons, Hotel essentially contends the Booking Contract does not violate 23.

¶ 12 We agree with Hotel based on different grounds. Whether the Booking Contract between Hotel and UCO is a "debt" in the constitutional sense or fits within either of the three "exceptions" discussed in *Application of Oklahoma Capitol Improvement Authority,* 2005 OK 90, 130 P.3d 232 [6], is irrelevant based on the Court's following explanation:

> The bonds we consider today, however, are unique and *need not satisfy any of the exceptions described above.* Because these bonds are payable only by the Regents, *they cannot become debts of the state as a matter of law. The Regents have the sole constitutional authority to disburse funds appropriated to them in a lump sum by the Legislature. The Legislature cannot be forced to appropriate funds to repay the bonds because it has no authority to dictate such a specific expenditure to the Regents.* (Italics added; citations omitted.) *Id.,* 2005 OK 90, ¶ 7, 130 P.3d at 236.

After discussing prior case law in which the status of the bonds as "self-liquidating" and had been issued by a government entity like the Regents was found not determinative, the Court in *Application of Oklahoma Capitol Improvement Authority* further explained:

> Similarly, the bonds we consider today cannot become debts of the state *because the Legislature cannot dictate how the Regents allocate their annual appropriation.* If the Legislature cannot dictate how the Regents allocate their appropriation, there is no legal or practical basis for compelling a future Legislature to appropriate tax money to retire the bonds. (Italics added; citations omitted.) *Id.,* 2005 OK 90, ¶ 10, 130 P.3d at 237.

¶ 13 The "same rationale" was recently adopted by the Court in *Matter of Oklahoma Development Finance Authority,* 2013 OK

---

**6.** The exceptions, referred to by the Court as three "types of financing," and citations to the cases in which the exceptions were recognized, are: 1) "self-liquidating" bonds where the revenues generated by the funded project provide the mechanism for total repayment, *see, e.g., Baker v. Carter,* 1933 OK 484, 165 Okla. 116, 25 P.2d 747; *In re Okla. Tpk. Auth.,* 1950 OK 208, 203 Okla. 335, 221 P.2d 795; 2) "long-term lease debt," *see, e.g., App. of Okla. Capitol Impr. Auth.,* 1960

OK 207, 355 P.2d 1028; *In re App. of Okla. Capitol Impr. Auth.,* 1998 OK 25, 958 P.2d 759, 787 n. 18; and 3) "appropriation-risk" debt, in which bond holders knowingly assume the risk that future Legislatures might not appropriate sufficient funds to repay the bonds. *Id.; Fent v. Okla. Capitol Impr. Auth.,* 1999 OK 64, 984 P.2d 200; *In re App. of Okla. Dev. Fin. Auth.,* 2004 OK 26, 89 P.3d 1075.

74, ¶ 4, 312 P.3d 926, 928, which involved a challenge to the Regent's "Master Lease Program" that provided lease financing for colleges and universities included in the Oklahoma State System of Higher Education to build various projects. As relevant here, the Court held "If these types of bonds are not debts of the state as a matter of law because the Legislature cannot be forced to appropriate funds to repay them, *it follows that the same is true when the payment is coming from the colleges and universities whose allocations fall under the umbrella of the Regents.*" (Italics added.) *Id.*

¶ 14 Unlike the lessor's long-term equipment lease with a state agency in *U.C. Leasing,* Hotel's Booking Contract is with UCO, which is "one of the institutions of the State of Oklahoma's System of Higher Education, and is supervised, managed and controlled by the *Board of Regents of Oklahoma Colleges* exercising power pursuant to statutes of the State of Oklahoma and Art. 13–B of the Oklahoma Constitution."[7] (Italics added.) *Teeter v. City of Edmond,* 2004 OK 5, ¶ 22, 85 P.3d 817, 823 (citing 70 O.S.Supp.1994

**7.** Hotel alleged in its Petition that UCO was a "public institution," which UCO clarified in its Answer by stating it "is an institution of higher education and a part of the Regional University System of Oklahoma which is established in the

3201; 70 O.S.1991 3501.1, 3510; and Okla. Const. Art. 13–B). It therefore follows that Hotel's Booking Contract with UCO, an institution under the allocation umbrella of the Regents, is not a debt of the state as a matter of law because the Legislature cannot be forced to appropriate funds to pay UCO's agreed-to obligation, and therefore, similarly does not violate either § 23 of the Oklahoma Constitution or Oklahoma's State Finance Act.

¶ 15 The trial court's judgment in favor of UCO is reversed, and the case remanded for further proceedings.

**REVERSED AND REMANDED.**

JOPLIN, P.J., and BUETTNER, J., concur.

Oklahoma Constitution. As such, it is an entity of Oklahoma State Government."